### METCALF et al. v. HOLBROOK.

#### No. 7207.

Circuit Court of Appeals, Seventh Circuit.

Oct. 30, 1940.

Henry M. Dowling, of Indianapolis, Ind., for appellants.

Merle H. Thomas, of Indianapolis, Ind., for appellee.

Before SPARKS and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiffs brought suit against defendant to establish and enforce a trust in a farm in Illinois and certain intangible personal property for plaintiffs as beneficiaries. The court made findings of fact and conclusions of law in favor of defendant and from the resulting judgment dismissing the complaint for want of equity this appeal was taken.

The farm upon which plaintiffs attempted to impress a trust is located in Hancock County, Illinois, and legal title thereto is in defendant. Plaintiff Metcalf claims that this land was in equity his and that by his deed to plaintiff Johnson, the latter has become the owner. The facts upon which the court relied in finding the contrary follow.

On November 29, 1884, Edward R. Metcalf, father of plaintiff Metcalf, being the owner of Lots 6 and 7 in Block 221, in Omaha, Nebraska, conveyed them to Hiram G. Ferris, a banker at Plymouth, Illinois, to secure such sums as Metcalf might owe the bank. Ferris having died on August 10, 1893, the executors of his

will, on May 22, 1894, conveyed the lots to defendant, who was then living in Cambridge, Mass., at the direction of Edward R. Metcalf in payment of moneys loaned to him by defendant. Metcalf, now deceased, in his life time confirmed this fact in a letter written August 8, 1895, in which he stated that her money was safe, as the lots had been deeded to her, and advised her as to the price she should obtain for them. At that time he held a power-of-attorney from her.

That part of Lot 5 in the same block involved in this litigation was conveyed to defendant by Harriet J. Laing on May 30, 1900, subject, however, to a mortgage to the Provident Life and Trust Company and a second mortgage to plaintiff Metcalf, securing $2,000, due June 10, 1901. Metcalf never foreclosed and by the Statutes of Limitation has lost any interest he may have had by virtue of his mortgage.

Defendant, being the owner of Lots 6 and 7 and that part of Lot 5 here involved, continued to own them of record until 1924 when a railroad company instituted proceedings to condemn the property for railroad purposes. Following this on December 5, 1924, plaintiff Metcalf executed a quit-claim deed to defendant for all the lots, and the next day defendant conveyed the premises to one Ehlers, an attorney, who in turn eventually on May 25, 1925, conveyed the premises to the railroad company, Ehlers receiving and remitting to defendant, the net proceeds of the purchase price.

Plaintiff Metcalf was then the owner of the farm in Hancock County, subject to a mortgage to the bank in Plymouth for $5,000. Defendant, with the money she had received from the sale of the lots, at the request of plaintiff Metcalf, advanced to the bank $5,262.50 then owing on the mortgage and the latter was assigned to her. The mortgage came due on September 5, 1925. Nothing was ever paid thereon. On March 5, 1930, defendant filed suit to foreclose this mortgage. Plaintiff Metcalf was made defendant to the action and testified for plaintiff in that cause, defendant here. In that action she asserted title to the premises and prayed for foreclosure of her mortgage against Metcalf. He made no answer to the bill and a decree followed, finding plaintiff to be the owner of the mortgage and decreeing foreclosure. At the sale

defendant bid $7,000 for the property. She paid $982.50 for costs and fees and applied the balance of $6,017.50 on the foreclosure decree in satisfaction thereof. After time for redemption by Metcalf and his creditors had expired, a master's deed was executed to defendant conveying the premises, and she has at all times remained the owner of record since the date thereof, May 11, 1933.

■ These facts are most persuasive that defendant was the owner of the lots in Omaha, of the consideration received therefor, of the mortgage in which she placed the funds and eventually, by foreclosure of the mortgage, of the Illinois farm. They rebut any claim of Metcalf that he had any interest in any of these assets although he insists that the lots and the money received therefor were his property and that, therefore, the mortgage was not the property of defendant but of himself. Unfortunately for him, however, his own statements, contemporaneous with the events, negative decisively, his claim. On May 12, 1925, he wrote defendant concerning the money she had received from the Omaha lots, saying he would like to borrow $5000 additional when she got the Omaha deal closed. He reported then that he owed the bank a mortgage for $5,000 and that he wanted to arrange to take it up. On May 26, 1925, he asked her to send a check to the bank and have it assign the mortgage it held to her. He advised her to keep a note he had sent her, to secure her in case of accident, and added that his total debt to her would then be $10,-000 secured by 300 acres of land. He wrote her on June 10, 1933, that he thought it would be a "good idea" to write to Omaha to get some evidence such as the checks sent him for rent "as agent" some years before, and on December 9, 1933, admitted that he owed her on rentals he had received from the Omaha lots. Thus his own statements and acts are wholly inconsistent with any valid claim to the farm upon his part. The evidence clearly substantiates the court's finding that defendant is the sole owner and that plaintiffs have no interest therein.

■ Furthermore, irrespective of the lack of merit of his claim, the decree of foreclosure entered against him in favor of defendant foreclosing all of his right, title and interest in and to the farm, is a complete bar to any assertion of inter-

est upon his part at this time. He made no such claim in the foreclosure suit. He failed to redeem, and by virtue of the proceedings, he is estopped now to assert title to the farm. If he had any interest in the land or in the mortgage which defendant was foreclosing, it would have been proper for him to have asserted it then as a defense. It is too late to claim what he could then have claimed.

■ Metcalf insists that 29 shares of stock of the Utica Gas & Electric Company or its proceeds held by defendant should be declared to be his property and held for his benefit. Metcalf had on September, 1931, handed to defendant a certificate for 29 shares of stock in the Utica Gas & Electric Company without assignment thereof. About a year later, he executed an assignment to her, telling her that he did not know at that time whether he would ever be able to pay her what he owed her but that this would help and that he wanted to apply it on what he did owe. At that time defendant held a note against him for $15,000. He wrote her on December 9, 1933, admitting that the stock had been assigned to apply on debts he owed her and hoping that she had reduced the certificates to cash, saying he hoped to live to be able to pay her back every cent he owed her before he died. On June 10, 1930, he had written her that he thought he could pay some on the $15,000 note. The evidence clearly indicates that the stock was transferred to defendant to apply upon his debt which has not been paid and that it and its proceeds are worth far less than the amount of the debt. The court was clearly justified in finding for the defendant as to this item.

■ Metcalf seeks to recover an additional sum of $938.27. This sum of money was left to defendant in trust to be used by her at her discretion for the benefit of Metcalf or his children, by one Mary Dennis. In December, 1927, Metcalf acknowledged receipt of the entire sum in full of his interest. Defendant testified she gave him the money. The receipt corroborates her testimony. Its ambiguous wording does not alter the fact that there was no other sum to which the receipt was applicable. The evidence clearly supports the court's finding.

The judgment of the District Court is affirmed.