**In re Norman Eugene (Jim) FRENCH, Debtor.**

**Bankruptcy No. 91–40108–PKE.**

United States Bankruptcy Court, D. South Dakota, S.D.

March 20, 1992.

J. Bruce Blake, Blake Law Offices, Sioux Falls, S.D., for debtor.

Kevin V. Schieffer, U.S. Atty., Craig Peyton Gaumer, Asst. U.S. Atty., Sioux Falls, S.D., for Farmers Home Admin.

Jon K. Haverly, Sp. Asst. U.S. Atty., Sioux Falls, S.D., for Small Business Admin.

Rick A. Yarnall, Sioux Falls, S.D., Chapter 12 Trustee.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

The matter before the Court is a Motion to Dismiss the Chapter 12 Case for Unreasonable Delay, filed by the United States of America [on behalf of the Farmers Home Administration (FmHA)], by and through Kevin V. Schieffer, United States Attorney, and Assistant United States Attorney Craig Peyton Gaumer and joined by Chapter 12 Standing Trustee Rick A. Yarnall (Trustee) and joined by the Small Business Administration (SBA) acting through Special Assistant United States Attorney Jon K. Haverly. A response was filed on behalf of the debtor by Sioux Falls Attorney J. Bruce Blake. A hearing was held January 14, 1992, and the matter was taken under advisement. The Court issues this ruling which shall constitute Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1).

### I.

Norman Eugene (Jim) French (Debtor) is a sixty-year-old farmer operating near Cavour, South Dakota. He has been in the farming business approximately 40 years. His current operation consists of 960 acres of land owned with his estranged wife, Velma. An additional 240 acres of land purchased by contract for deed is also part of the farming operation. The farming enterprise is approximately 20 percent livestock feeding and 80 percent crop raising. About 140 head of cattle are maintained,

and in 1991, Debtor raised approximately 117 calves which were later sold as yearlings. The land is used for pasture and for raising corn and alfalfa. During the years between 1975 and 1988, Debtor also operated his own trucking business.

On February 12, 1991, Debtor filed an individual voluntary petition for relief under Chapter 12 of the Bankruptcy Code. Schedules and financial statements were filed on March 27, 1991, and an 11 U.S.C. § 341 Meeting of Creditors was held the same day.[1] An amendment to Schedule B–2 was subsequently filed on May 3, 1991.[2]

On the date the petition was filed, marriage dissolution proceedings were pending between Debtor and Velma French in circuit court.[3] The divorce is still pending.

All parties to this bankruptcy have initiated and participated in case proceedings prolonging its disposal. When the case had aged one year, more than 300 pleadings and documents had been filed. A sample listing indicates the undertaking the parties have dealt with and responded to throughout this one-year time period: hearings and objections to the use of cash collateral; numerous stipulations, agreements, and orders regarding the use of cash collateral, provisions of adequate protection, and plan treatment as it relates to various creditors; numerous motions for relief from the automatic stay and multiple stipulations regarding such relief; a request for and objections to a proposed private sale of property; stipulations and agreements concerning the secured status of creditors; requests for production of documents, requests for admission, and requests for Bankruptcy Rule 2004 exams; motions for valuation of collateral, appraisal reports, and stipulations regarding participation in valuation hearings; applications to remove the pending divorce action; and motions to remove the debtor-in-possession are all samples of the multitude of filed documents. This case has had an inordinate amount of filed documents and pleadings.

On May 13, 1991, Debtor made a Motion for an Order Extending Time to File Plan. Two responses were received in connection with this request and a hearing was held. The Court, under the authority of 11 U.S.C. § 1221, granted the motion to extend the 90–day time period to file a Chapter 12 Plan. A Chapter 12 Plan was filed August 12, 1991, and a confirmation hearing is scheduled for June 25, 1992.

On December 3, 1991, the FmHA filed a Motion to Dismiss. The motion was amended on January 8, 1992. The motion is supported on three grounds. The first ground recites that Debtor is not eligible for Chapter 12 relief under the Bankruptcy Code. Second, the Court lacks in rem jurisdiction to conduct a bankruptcy proceeding in this case. Third, the Tenth Amendment to the United States Constitution bars a federal court from hearing divorce cases. On January 23, 1992, FmHA filed yet another Motion to Dismiss for Unreasonable Delay.

The Chapter 12 Trustee filed a joinder to FmHA's motion and supports it with the following evidence and arguments: the case exceeds one year in age; no plan was filed within 90 days of the date of petition; the Debtor has initiated numerous filings which have caused unnecessary delay; the Debtor has not taken action to move the valuation hearings forward; and the "particular facts and circumstances" of this case, particularly the fact that Debtor's divorce has been pending more than five years, are evidence of Debtor's tendency to delay matters.

A brief filed by the SBA also supports a motion to dismiss. The brief cites case law identifying specific behavior and circumstances which a court may use to dismiss a

---

1. Without objection, the Court granted a request to extend the 15–day period for filing statements and schedules. The order extended the filing time to April 1, 1991.

2. Notice of Filing of Amendment to Schedule B–2 pertained to "Unencumbered personalty: Cash on hand in checking account."

3. The divorce proceedings were filed November 30, 1987, Third Judicial Circuit, Beadle County, State of South Dakota, DIV. 87–326.

case for unreasonable delay, including failure to make creditor payments during the pendency of a case prior to confirmation, submitting a plan that is not readily confirmable, and failure to provide valuation of claims. The SBA concludes that in this case, "all continuances testified to or identifiable from the Clerk's docket sheets show that the Debtor is responsible for the delay."

Debtor filed a memorandum in response to the Motion to Dismiss, stating that 11 U.S.C. § 1208(c) contains a three-pronged test consisting of "unreasonable delay," "by the debtor," "that is prejudicial to creditors." It is Debtor's position that the pending divorce action and other unresolved issues cause this case to exceed the usual four- or five-month time frame. The Debtor also maintains that the delays have not been caused by the Debtor nor have been prejudicial to the creditors.

■ The following sections will address the issues used to support the Motion to Dismiss. As announced by this Court in *In re Sheehan*, 58 B.R. 296 (Bankr.D.S.D. 1986), "The burden of proof in a motion for dismissal rests squarely upon the moving party." *Id.* at 299, citing *In re Economy Cab & Tool Co., Inc.*, 44 B.R. 721, 724 (Bankr.D.Minn.1984).

## II.

FmHA asserts that, "as a matter of law, Debtor was not a family farmer on the date he filed for Chapter 12 relief." Title 11, Section 109(f) of the United States Code provides that only a family farmer with regular income may be a debtor under Chapter 12 of the Code. 11 U.S.C. § 101(18) requires an individual "family farmer" to be an

(A) individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming

operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed.

■ FmHA uses the phrase, "on the date the case is filed," to make its ineligibility argument. It is a technical argument that stems from an order announced February 8, 1991, by the Third Judicial Circuit Court in the Debtor's divorce proceedings. On that date, the state court announced that Norman French must vacate the marital real property, i.e., the farm, and that Velma French would be awarded interim possession. FmHA states that "[the] only way [French] could be engaged in farming on the date of filing is by violating the state's court order."

Although this "full faith and credit" argument is theoretically interesting, it has no application to this case. South Dakota law provides, "A judgment or an order becomes complete and effective when reduced to writing, signed by the court or judge, attested by the clerk and filed in his office." S.D.C.L. § 15–6–58. In this case, the state court's order to vacate was not effective on the petition filing date of February 12, 1991, because it was not signed or entered by the state court until February 15, 1991. The argument simply does not apply here.

■ Another problem exists with the ineligibility argument. FmHA asserts that because interim possession of a marital asset was awarded to Velma French, Norman French is no longer a farmer for purposes of obtaining relief under Chapter 12 of the Code. The state court awarded possession of the farm merely for the pendency of the divorce proceedings. It was not a permanent award divesting the Debtor of any legal or equitable interest in the farmland. It was not an attempt to divide marital property under a decree of divorce. In

fact, since no judgment of divorce has been entered, Velma French has no vested property rights in the marital assets and those interests passed into the bankruptcy estate free of claims by her. *In re Greenwald,* 134 B.R. 729, 731 (Bankr.S.D.N.Y.1991). The Bankruptcy Code defines "farmer" in terms of debt and receipt of gross income for the tax year preceding the petition date. 11 U.S.C. § 101(18), (20). Qualification as a Chapter 12 debtor does not hinge on possession alone. In fact, the Code does not include residence or possession as a requirement at all. The Code does, however, define a farming operation as producing or raising crops and/or livestock, activities this debtor has engaged in for two-thirds of his life. 11 U.S.C. § 101(21). "The legislative history indicates that the definitions of farmer and farming operation are to be liberally construed." *In re Maike,* 77 B.R. 832, 835 (Bankr.D.Kan.1987), citing *In re Blanton Smith Corp.,* 7 B.R. 410 (Bankr. M.D.Tenn.1980). No one factor alone is conclusive to determine whether an individual is a farmer or is involved in a farming operation. *Id.* at 837. The totality of circumstances surrounding the nature and practice of this debtor relative to farming in rural South Dakota leads the Court to conclude that no meaningful argument exists to sustain a dismissal based on ineligibility as a Chapter 12 family farmer.

### III.

■ FmHA's second argument challenges jurisdiction and is twofold in nature. First is lack of constitutional ripeness. Since the bankruptcy court is a unit of the federal district court, it is subject to the doctrine of ripeness under Article III of the Constitution. FmHA declares that a "purported debtor must have property rights that are clearly ascertained, or readily ascertainable, to have a case or controversy ripe for Title 11 adjudication." Applied here, FmHA maintains that because Norman French's divorce is pending in state court, there is now no ripe justiciable issue for the bankruptcy court, and until a division of marital property is made, the bankruptcy court cannot make determinations regarding property distribution to credi-

tors. "Without the benefit of a crystal ball or the gift of omniscience, the date when the property rights of Norman French will be ready for immediate adjudication before this court remain a mystery."

■ While it is a mystery how the marital property will be divided, it is simply not true to state that the bankruptcy court lacks jurisdiction based on this rationale. A bankruptcy estate is created when a petition for relief is filed. 11 U.S.C. § 541(a). The estate is made up of "all legal or equitable interest[s] of the debtor in property, wherever located, as of the commencement of the case." 28 U.S.C. § 1334(d); *In re Greenwald,* 134 B.R. 729 at 730. The bankruptcy court, as a unit of the federal district court, "shall have exclusive jurisdiction" over this estate property. 28 U.S.C. § 1334(d). Legal or equitable interests held by an individual do not evaporate when a marriage dissolution action is filed. Neither are they so unascertainable as to result in an issue not yet ripe for resolution by the bankruptcy court. The commencement of the bankruptcy case captures those legal and equitable interests. The Code does not define the interests, but it does make them part of the estate.

There are, however, limits to legal and equitable interests belonging to the estate. For example, one limitation is any settlement agreement reached between a debtor and spouse. 11 U.S.C. § 541, Historical and Revision Notes at 177; *In re Greenwald,* 134 B.R. 729 at 730. In this case, however, no party has indicated that any antenuptial settlement agreement exists to limit the estate of this debtor. Neither has any settlement agreement been reached or approved in connection with the pending divorce action. No other estate limitations exist in this case that would act to reduce or eliminate the Debtor's bankruptcy estate.

Without a doubt, an estate was created at the time this Chapter 12 case was filed, and the estate consists of all of Norman French's legal and equitable interests in all of his property, wherever it is found. The fact that a division of marital assets is

likely to occur in the future does not change this result. The only remaining question is how those interests will be defined. Usually, state law provides the definition. 4 L. King, *Collier on Bankruptcy* ¶ 541.07 at 541–29 (15th ed. 1983); *In re Becker,* 136 B.R. 113 (Bankr.D.N.J.1992), citing *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Matter of Hursa,* 87 B.R. 313, 321 (Bankr. D.N.J.1988). Since a case was commenced, and since property within an estate does exist, the issue of how the Debtor will go forward to reorganize under the provisions of the Bankruptcy Code is ripe.

▪ The second jurisdictional issue is lack of in rem jurisdiction. FmHA claims that because the state court first had jurisdiction over the property and because the bankruptcy court later remanded the divorce proceeding back to the state court, the federal courts no longer have jurisdiction over the property rights of Norman French and his wife. FmHA declares that the Third Judicial Circuit Court has complete jurisdiction of the property of the parties. Further, FmHA insists that the bankruptcy court went beyond the scope of authority vested to it by Congress when it issued a remand order with a proviso that it would retain the power to review any property dispositions made by the state court.

In *In re Washington,* 623 F.2d 1169 (6th Cir.1980), *cert. denied sub nom., Wasserman v. Washington,* 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 826 (1981), the Sixth Circuit reversed the bankruptcy court's conclusion that even though the state divorce court had prior in rem jurisdiction over the debtor's property, the bankruptcy court could still assert its jurisdiction. The Sixth Circuit came back in 1988 to decide the case of *In re White,* 851 F.2d 170 (6th Cir.1988), and stated that the rule in *Washington* no longer applies "to give the state court jurisdiction over property simply because it may have been the first court to exercise control over the property." *Id.* at 173. *See also In re Modern Boats, Inc.,* 775 F.2d 619 (5th Cir.1985) (bankruptcy court asserted jurisdiction even though the

admiralty court had prior in rem jurisdiction). An analysis that gives a court control over property simply because that court had prior in rem jurisdiction is rejected here.

The *White* court found that the 1978 Bankruptcy Code and the 1984 Amendments to the Bankruptcy Code were aimed at avoiding in rem challenges. "The jurisdiction granted in 28 U.S.C. § 1334(d) indicates a conscious effort by Congress to grant the bankruptcy court special jurisdiction and to preclude the type of jurisdictional disputes evidenced in those cases." *In re White,* 851 F.2d 170 at 173. Section 1334(b) states, "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Legislative history states:

Subsection (b) is a significant change from current law. It grants the bankruptcy court original (trial), but not exclusive, jurisdiction of all civil proceedings arising under title 11. This is the broadest grant of jurisdiction to dispose of proceedings that arise in bankruptcy cases or under the bankruptcy code. Actions that formerly had to be tried in State court ... may now be tried in the bankruptcy court.... The bankruptcy court is given in personam jurisdiciton [sic] as well as in rem jurisdiction to handle everything that arises in a bankruptcy case.

. . . .

Indeed, because title 11, the bankruptcy code, only applies once a bankruptcy case is commenced, any proceeding arising under title 11 will be in some way "related to" a case under title 11. In sum, the combination of the three bases for jurisdiction, "arising under title 11," "arising under a case under title 11," and "related to a case under title 11," will leave no doubt as to the scope of the bankruptcy court's jurisdiction over disputes.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 445, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6400–01.

As noted by the Eighth Circuit, the problem is understanding the existence of jurisdiction and the exercise of jurisdiction:

> The existence of jurisdiction in a bankruptcy ·case or proceeding rests on a broad and complete constitutionally authorized direct grant of authority by Congress to the district courts over all matters and proceedings that are connected to a bankruptcy case. The exercise of jurisdiction by a bankruptcy court in a bankruptcy case or proceeding rests on a limited and circumscribed reference of derivative authority from the district court to the bankruptcy court over most, but not all, proceedings that are connected to a bankruptcy case.

This broad grant of authority establishing the existence of jurisdiction in the district court has been recognized repeatedly in various circuit opinions. *Matter of Hughes–Bechtol, Inc.*, 107 B.R. 552, 554 (Bankr.S.D.Ohio 1989), citing *In re Arkansas Communities, Inc.*, 827 F.2d 1219 (8th Cir.1987). This divorce proceeding is connected to Debtor's bankruptcy case and, therefore, jurisdiction exists. Exercise of that jurisdiction is a separate matter.

In sum, the ripeness doctrine does not apply since an estate of legal and equitable property rights is created when a bankruptcy case is commenced even though the interests have not been defined. The creation of the bankruptcy estate is sufficient for a bankruptcy court to proceed with the business of either liquidation or reorganization. It is a ripe issue even though state law may define what the legal and equitable interests are. The amendments to ·the Bankruptcy Code, through 28 U.S.C. § 1334(d) and (b), coupled with the legislative history, clearly indicate that the bankruptcy court has jurisdiction over such matters as a pending divorce even when the state divorce court had in rem jurisdiction first or the bankruptcy court remanded the civil matter back to the state court.

## IV.

This Court remanded the divorce proceeding back to state court on October 28, 1991. The purpose of the remand was to allow the state court to use its expertise in resolving such matters and to decide questions that are part of the divorce process. *In re White*, 851 F.2d 170 at 173. Generally, this Court believes in the traditional notion that domestic relations can be best resolved in state court. *In re Elamin*, 126 B.R. 855, 858 (Bankr.E.D.Va. 1991).

> "It is appropriate for bankruptcy courts to avoid invasions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'"

*In re Graham*, 14 B.R. 246, 248 (Bankr. W.D.Ky.1981).

Two sections to Title 28 deal with the bankruptcy court's ability to exercise jurisdiction or, as referred to by the Code, to abstain from hearing certain matters. The first, 28 U.S.C. § 1334(c)(1), is a permissive abstention: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). The second, 28 U.S.C. § 1334(c)(2), is a mandatory abstention: "Upon timely motion of a party … the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). The decisions in *White* and *Becker* held that abstaining was within the discretion of the bankruptcy court. Other courts have suggested that, pursuant to Section 1334(c)(2), the bankruptcy court must abstain from determining property rights between debtor and non-debtor spouses when the state court can make the determination. *Matter of Hursa*, 87 B.R. 313 (Bankr.D.N.J.1988). This Court believes abstention is discretionary, deter-

mined on a case-by-case basis. In this case, the Court chose to abstain.

Clearly, the Code grants the bankruptcy court authority to handle divorces and also to abstain from hearing divorces.

Last, the Court does not conclude that it overstepped its authority by retaining the power to review any property dispositions made by the state court. It is not uncommon nor prohibited. *See In re Becker*, 136 B.R. 113, citing *In re Loughnane*, 28 B.R. 940, 942 (Bankr.D.Colo.1983); *In re Steffan*, 97 B.R. 741, 745 (Bankr.N.D.N.Y. 1989).

### V.

■ The Chapter 12 Trustee's and SBA's joinders to FmHA's Amended Motion to Dismiss focus on "unreasonable delay" pursuant to 11 U.S.C. § 1208(c) as further grounds for dismissal.[4] This section of the Code is not narrow in scope. Section 1208(c) spells out nine specific grounds for dismissing a Chapter 12 case. Dismissal is not limited to those nine grounds, however, and a court may find other examples of conduct that would allow dismissal. *See In re Euerle Farms, Inc.*, 861 F.2d 1089 (8th Cir.1988).

Movants in this case cite the first ground of 11 U.S.C. § 1208(c) as cause for dismissing the case at hand. "Unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors" is the first ground. The phrase is written in the conjunctive, meaning that the court would need to find that the debtor has engaged in activities that have caused unreasonable delay or gross mismanagement *and* that

the delay or mismanagement has prejudiced the creditors. 5 L. King, *Collier on Bankruptcy* ¶ 1208.01 at 1208–5 (15th ed. 1983).

Case law indicates that unreasonable delay can be found in failure to file documents in a timely fashion, failure to request extensions when time periods have expired, failure to file a confirmable plan, failure to file a modification after plan confirmation is denied, and failure to perform under the terms of a confirmed plan. The facts in *In re Lubbers*, 73 B.R. 440 (Bankr. D.Kan.1987), provided the court with cause to dismiss under Section 1208(c). In *Lubbers*, the debtors commenced their case with only a cover sheet, nothing more. *Id.* at 441. A Section 341 meeting of creditors was held even though the debtors never filed any schedules nor asked for an extension. *Id.* Similarly, the debtors did not file a plan within 90 days nor did they ask for an extension under Section 1221. *Id.* Two days after the 90–day limit expired, debtors moved for the extension, which was uncontested, but then failed to supply an order for the extension. *Id.* When the plan was filed, it was so generic that it did not specifically name any creditor nor indicate any specific amount to be paid to any specific creditor. *Id.* Several creditors objected to plan confirmation, and at the confirmation hearing, the court granted a motion to dismiss. *Id.* at 441–42. The court found that the debtors had violated nearly every applicable bankruptcy rule or provision, did not justify their extended plan filing, and when a plan was filed, it was "virtually meaningless and simply [gave] the appearance of having been filed in or-

---

4. Section 1208(c) provides in full:
   (c) On request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter for cause, including—
   (1) unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors;
   (2) nonpayment of any fees and charges required under chapter 123 of title 28;
   (3) failure to file a plan timely under section 1221 of this title;
   (4) failure to commence making timely payments required by a confirmed plan;
   (5) denial of confirmation of a plan under section 1225 of this title and denial of a re-

quest made for additional time for filing another plan or a modification of a plan;
   (6) material default by the debtor with respect to a term of a confirmed plan;
   (7) revocation of the order of confirmation under section 1230 of this title, and denial of confirmation of a modified plan under section 1229 of this title;
   (8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; or
   (9) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation.

der to forestall a motion to dismiss for failure to file a plan." *Id.* at 442.

Another Chapter 12 case properly dismissed for debtors' unreasonable delay prejudicial to creditors was *Novak v. DeRosa (In re Novak)*, 934 F.2d 401 (2d Cir. 1991). In this case, the Chapter 12 debtors filed a plan, but confirmation was denied since it did not meet the requirements of 11 U.S.C. § 1225(a)(4). *Id.* at 403. The February 1989 denial of confirmation was without prejudice to the filing of an amended plan. *Id.* In August, 1989, the court warned the debtors that their delay in filing the amended plan had become excessive, yet another 70 days lapsed before the amended plan was filed. *Id.* at 404. In October, 1989, the court issued an order to show cause why the petition should not be dismissed since an amended plan was still not on file. *Id.* Two days later, the debtors filed the amended plan, but the case was dismissed, a decision affirmed by the district court. *Id.* "Even after being ordered to show cause ... why their petition should not be dismissed, [the debtors] made no submission justifying the delay." *Id.*

In *In re Rivera Sanchez*, 80 B.R. 6 (Bankr.D.P.R.1987), the court dismissed a Chapter 12 petition because the plan was denied confirmation under 11 U.S.C. § 1225 and because the debtors were late in filing schedules and statements of affairs, made an untimely modification of the plan (four days before confirmation), and failed to provide valuation of collateral given to FmHA. *Id.* at 8. The sum total of this conduct was deemed unreasonable delay prejudicial to the creditors, warranting dismissal.

A Chapter 12 dismissal was also warranted in *In re Euerle Farms, Inc.*, 861 F.2d 1089 (8th Cir.1988), where income and expense projections supplied by the debtor clearly showed that reorganization was completely unrealistic and the plan was submitted in bad faith. *Id.* at 1091. The Eighth Circuit stated in this case that the court may use a "multiplicity of factors" to consider whether dismissal is proper pursuant to Section 1208(c). *Id.*

Keeping in mind those factors, conditions, and conduct that have been determined to be unreasonable delay prejudicial to creditors warranting dismissal under Section 1208(c), the Court now looks to the facts, conditions, and conduct in the case sub judice. In doing so, the Court is unable to find sufficient cause to dismiss based on Debtor's unreasonable delay that has prejudiced the creditors.

Here, Debtor's counsel sought, justified, and obtained extensions to file the schedules and statements in connection with the start-up of this case. There were no objections to these requests. Prior to the expiration of the 90–day time limit required for filing a plan, Debtor sought, justified, and obtained the Court's extension for filing the Chapter 12 Plan. The extensions sought are available under the Code, and the Debtor is entitled to make such requests. There has been no abuse of this process. A Chapter 12 Plan of Reorganization has been on file for some months, and a confirmation hearing has been scheduled. No cause has been raised to indicate that the plan is unrealistic or clearly incapable of being confirmed. A review of the docket indicates that all parties have made numerous filings, motions, requests, objections, or responses. This has increased the work load to all parties, especially the Debtor, requiring additional effort and time. This is evidenced by numerous agreements, settlements, and stipulations negotiated between the parties. Any blame for the fact this case is more than one year old is to be shared by all parties, creditors, and Debtor. Delay has been caused by all parties, not the Debtor alone. Therefore, the creditors have not been prejudiced. And even though the apparent acrimony between Debtor and his wife has fueled a seemingly endless divorce, it is not accurate to conclude that Debtor has single-handedly done the same with the bankruptcy case so as to prejudice creditors and fulfill movants' burden of proof warranting dismissal.

An appropriate order will be entered.

## ORDER REFUSING MOTION TO DISMISS FOR UNREASONABLE DELAY

In recognition of and in compliance with the Memorandum Decision regarding the Motion and Joinders to Dismiss for Unreasonable Delay entered this day, it is hereby

ORDERED that the motion is refused and the case is not dismissed pursuant to 11 U.S.C. § 1208(c) for unreasonable delay.