**In re Lewis F. WEINBERG, Debtor.**

**Lewis F. WEINBERG, Plaintiff,**

**v.**

**Colene BOYLE, Bonnie Weinberg, and Weinberg–PM, Inc., a South Dakota Corporation, Defendants.**

**Bankruptcy No. 92–40025.
Adv. No. 92–4052.**

United States Bankruptcy Court,
D. South Dakota, S.D.

April 6, 1993.

Dixon & Dixon P.C. by Harry D. Dixon, Jr., T. Randall Wright, Omaha, NE, Davenport, Evans, Hurwitz & Smith by Robert E. Hayes, Sioux Falls, SD, for defendants Bonnie Weinberg and Weinberg–PM, Inc., movants.

Grunewaldt Law Office by Cecelia A. Grunewaldt, Sioux Falls, SD, for plaintiff/debtor Lewis F. Weinberg, respondent.

### *MEMORANDUM DECISION*

PEDER K. ECKER, Bankruptcy Judge.

The matter before the Court is a 28 U.S.C. § 1334 motion to abstain, filed by Omaha, Nebraska, Attorneys Harry D. Dixon, Jr., and T. Randall Wright, and by Sioux Falls, South Dakota, Attorney Robert E. Hayes on behalf of Defendant Bonnie Weinberg [hereinafter "Defendant"] and Defendant Weinberg–PM, Inc., requesting the Court to abstain from any decision or further proceedings relative to an adversary complaint filed by Sioux Falls, South Dakota, Attorney Cecelia A. Grunewaldt on behalf of Plaintiff/Debtor which seeks a turnover of property or mon-

ey on behalf of the bankruptcy estate pursuant to 11 U.S.C. §§ 541, 543 and a rejection of a property settlement agreement pursuant to 11 U.S.C. § 365 which was reached between Debtor and Defendant during marriage dissolution proceedings in a Nebraska state court. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Federal Bankruptcy Rule of Procedure 7052. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1).

## FACTS AND PROCEDURAL BACKGROUND

The pleadings and exhibits indicate Debtor and Defendant married in 1976 in Dakota County, Nebraska. During the marriage, the couple purchased, developed, and managed various real estate holdings, many of which consisted of limited partnerships which owned apartment properties. In 1988, divorce proceedings commenced, and at that time, the couple owned either together or individually interests in some 20 real estate partnerships as well as interests in various other real estate projects and corporations. Despite vigorously contested dissolution proceedings, a property settlement agreement [hereinafter "PSA"] was reached, signed, and approved by the District Court of Dakota County, Nebraska, wherein the various real estate and partnership holdings were divided.[1] The state court filed its decree of marriage dissolution and PSA approval August 1, 1989.

In October, 1990, Defendant filed an "Application for Clarification of Property Settlement Agreement" to resolve disagreement over numerous issues relating to the PSA and decree of divorce. In addition to seeking a clarification of partnership distributions to be made to the parties and clarification of property management rights as acting general partners of certain partnerships, Defendant also sought an order from the court requiring Debtor's cooperation in effectuating a: 1) tax-free transfer of Defendant's divided one-half interest in certain limited partnerships; 2) turnover of a $750,000 note held by Debtor; and 3) an accounting of all receipts and disbursements made pursuant to the PSA.

Before Defendant's action was resolved, however, Debtor filed a declaratory judgment action seeking a determination of: 1) rights and responsibilities of the parties under the PSA; 2) liability for tax consequences of transfers of assets between and among the parties as referred to in the PSA; and 3) the performance or non-performance of the PSA and decree by the parties. Defendant Weinberg–PM, Inc., one of the real estate management corporations held by the couple, filed a Motion for Interpleader in the declaratory judgment action, offering to tender into court $33,-451.20, a sum derived from distributions available from real estate properties it managed.[2] Defendant filed a counterclaim also seeking a declaration of debts and obligations as between the two parties.

These tandem proceedings reached fever pitch when the District Court for Dakota County responded to Defendant's application for a show cause hearing and held Debtor in contempt for violating the PSA and divorce decree by withdrawing about $251,000 from various partnership accounts and "for refusing to answer questions and related offenses" at the March 18, 1991, hearing.[3] Debtor subsequently took advantage of the opportunity to purge the

---

1. The PSA, approved by the District Court on August 1, 1989, entitled each party to a divided one-half interest in certain general and limited partnerships. Debtor was obligated to "obtain" appropriate partnership amendments needed to effectuate the transfers of interest. No partnership distribution could be made to the parties until this was accomplished.

2. Defendant is president or manager of Defendant Weinberg–PM, Inc., and, as such, controls all distributions from the real estate limited partnerships. Debtor claimed entitlement to the distribution of these funds while Defendant contended the funds could not be distributed until Debtor properly complied with certain PSA requirements.

3. Debtor contends the lack of cooperation during the show cause hearing was due to the fact regular counsel was not available to appear, and, instead, a junior partner, unfamiliar with the case, was substituted for Debtor's representative.

contempt citation by depositing the money with the clerk of court.

As of January 13, 1992, when Debtor filed this Chapter 11 petition for relief, Defendant's application for clarification of the PSA remained unresolved and Debtor's declaratory judgment action had reached the discovery stage, however, both matters were stayed pursuant to 11 U.S.C. § 362(a).

On November 6, 1992, Debtor filed a "Complaint for Turnover and Rejection of Executory Contract," an adversary matter consisting of seven counts requesting an order for turnover of property to the estate pursuant to 11 U.S.C. §§ 541, 543 [4] and one count for authority to reject the PSA as an executory contract.[5] Two of the three defendants named in the complaint filed a motion [6] requesting the Court to abstain from deciding the adversary matter pursuant to 28 U.S.C. § 1334(c)(1) and/or (c)(2). Movants claim the issues and controversies in the adversary complaint were being litigated in state court divorce proceedings, and if the Court does not abstain, it will, in effect, be acting as a state domestic relations court and will be required to decide whether to overrule or enforce state court orders which were in effect prior to the filing of this bankruptcy case. In resisting the motion, Debtor states most of the as-

sets in this case involve interests in South Dakota real estate limited partnerships, therefore, this matter involves interpretation of South Dakota partnership law and Internal Revenue Code provisions as opposed to any peculiarly state domestic relations law. Furthermore, the decree of divorce has previously been entered, so Nebraska domestic relations law is not being considered, despite the fact numerous actions have been filed by the parties which, Debtor notes, have not even progressed through the discovery phase. Finally, the adversary complaint is a core proceeding pursuant to 28 U.S.C. § 157(b), meaning abstention is not mandatory, but rather, is a voluntary possibility, depending on the Court's discretion. After a hearing on December 16, 1992, the Court took the matter under advisement and issued a scheduling order for submitting written briefs.

## COMPETING ARGUMENTS

In written argument, Movants urge the Court to abstain, since the adversary action, simply couched in terms of turnover actions with a request for rejection of an executory contract, is, in reality, an attempt to modify the Nebraska divorce decree and presents the same domestic relations issues being litigated when the bank-

---

**4.** According to statements contained in the adversary complaint, the following sums of money are property of the estate under 11 U.S.C. § 541 held by custodians as defined by 11 U.S.C. § 101(10)(C) and are subject to turnover to this debtor-in-possession pursuant to 11 U.S.C. § 543:

a) Count I seeks a turnover of $251,351.53, the amount subject to the contempt action against Debtor which is held by the Dakota County District Court Clerk;

b) Count II seeks a turnover of $197,371.85, held by Defendant pursuant to the PSA;

c) Count III seeks a turnover of $115,107.20, held by Defendant without any state court authority;

d) Count IV seeks a turnover of $33,451.20, the amount representing 1992 partnership distributions due Plaintiff/Debtor from various real estate partnerships managed by Defendant Weinberg–PM, Inc.;

e) Count V seeks a turnover of $1,097.23, the amount of distribution due Plaintiff/Debtor as an 80% general partner in a limited partnership;

f) Count VI seeks a turnover of $1,939.68, the amount of distribution due Plaintiff/Debtor

as an 80% general partner in a limited partnership; and

g) Count VII seeks a turnover of $118,507.73, the amount due Plaintiff/Debtor from 18 real estate partnerships in which Plaintiff/Debtor is a general partner.

**5.** This is a request pursuant to 11 U.S.C. § 365 to reject the state-court-approved PSA. The complaint states the PSA is an executory contract since no partnership interests have been successfully or properly transferred, the breach of which excuses performance from the other party. In view of Debtor's reorganization efforts, Count VIII states the PSA, as an executory contract, "is not in the best interests of the estate and rejects the same."

**6.** The complaint, Adversary No. 92–4052, names Bonnie Weinberg, Weinberg–PM, Inc., a South Dakota Corporation, and Colene Boyle, District Court Clerk of Dakota County, Nebraska, as defendants. The motion to abstain was filed by Bonnie Weinberg and Weinberg–PM, Inc. [hereinafter "Movants"].

ruptcy case was filed. These issues will turn on Nebraska domestic relations and contract law, which are best determined in Nebraska state courts. The Bankruptcy Court should not have to act, nor is it required to act, as a divorce court. Marriage generally involves predominantly state law issues, and various bankruptcy courts have abstained from hearing such cases, recognizing that domestic relations issues are better dealt with by state courts. *Matter of Hursa*, 87 B.R. 313 (Bankr. D.N.J.1988); *Matter of Brown*, 46 B.R. 612 (Bankr.S.D.Ohio 1985). Movants also rely on *In re French*, 139 B.R. 476 (Bankr. D.S.D.1992), wherein this Court discussed the issue of marital relations in the context of a challenge to bankruptcy jurisdiction, and in doing so, noted the Court's capability to retain power to review state court property decisions whenever abstention or remand is used. *See also Matter of Hursa*, 87 B.R. at 325. If the Court abstains, all creditors of this bankruptcy estate will benefit by allowing the state court to rule on the domestic relations issues, thus leaving any issues that directly affect the creditors, i.e., the plan and confirmation process, to be addressed by this Court.

Debtor admits that insolvency at the time of divorce, coupled with subsequent loss of several properties to foreclosure and tax deeds, precipitated this Chapter 11 financial reorganization. In order to formulate a viable plan of reorganization, however, property of the estate must be determined. Although Debtor's divorce is complete, partnership and income tax issues linked to the PSA remain either unclear or in dispute, or both, which affects what constitutes property of this estate. The adversary complaint is not a domestic relations case, but, rather, is a turnover action seeking property on behalf of the bankruptcy estate and a request to reject an executory contract between a debtor and creditors and a depository of estate funds. Since the action involves property of the bankruptcy estate, it touches and

concerns the Debtor and all his creditors, making Bankruptcy Court the proper forum.

Debtor also argues that since a turnover action is enumerated as one of the core proceedings listed in 28 U.S.C. § 157(b)(2), any argument for mandatory abstention under 28 U.S.C. § 1334(c)(2) is disqualified. Discretionary abstention is not necessarily strengthened by virtue of the fact that a debtor and creditor were former spouses. Rather, a best-interests-of-the-estate test should be used to make a decision of voluntary abstention. Factors should include the existence of any unsettled or difficult issues of state law, the expertise and the time needed to expeditiously hear and decide the adversary action, and whether all parties with a vital interest in the outcome are afforded the most appropriate forum. Under this analysis, Debtor concludes this Court has the jurisdiction, expertise, time, and ability to provide all parties with a proper forum for resolving the matter. Therefore, the motion should be denied.

## APPLICABLE LAW

### A. Bankruptcy Jurisdiction

■ Original bankruptcy jurisdiction is vested in the district courts [7] and consists of three different, yet overlapping aspects: jurisdiction over all cases, over all property of the debtor, and over all civil proceedings. 28 U.S.C. § 1334(a), (b), (d). The Bankruptcy Code grants original and exclusive jurisdiction to the district courts over all property of the debtor and over all cases under title 11.[8] 28 U.S.C. § 1334(a), (d). In contrast, the court has original *but not exclusive* jurisdiction over all civil proceedings designated by the following terms of art: "arising under title 11, or arising in or related to cases under title 11." Non-exclusive jurisdiction means other federal and state courts are not deprived of jurisdiction over civil proceedings. 28 U.S.C. § 1334(b).

---

7. Although subject matter jurisdiction is vested in the district courts, cases and proceedings are referred or delegated to the bankruptcy courts. 28 U.S.C. §§ 151, 157.

8. A title 11 case is commenced when the bankruptcy petition is filed. 11 U.S.C. § 301.

■ Legislative history indicates *anything* occurring in a title 11 case is a proceeding, and since bankruptcy jurisdiction is pervasive, many proceedings arising "under" title 11 may in some way also be "related to" a case under title 11:

By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11.... Many of these claims would also be claims arising under or related to a case under title 11. Indeed, because title 11, the bankruptcy code, only applies once a bankruptcy case is commenced, any proceeding arising under title 11 will be in some ways "related to" a case under title 11. In sum, the combination of the three basis for jurisdiction, "arising under title 11," "arising under a case under title 11," and "related to a case under title 11," will leave no doubt as to the scope of the bankruptcy court's jurisdiction to hear disputes.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 445–46 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News pp. 5787, 5963, 6400–01. Although bankruptcy jurisdiction was intentionally designed by Congress to be pervasive, it does not mean that the court's authority to exercise jurisdiction is equally pervasive. *In re Arkansas Communities, Inc.*, 827 F.2d 1219 (8th Cir.1987). The extent to which a bankruptcy court can act on a referred matter turns on whether the matter is classified as a "case," a "core,"[9] or a "non-core"[10] proceeding.

B. Exercising Bankruptcy Jurisdiction

In all title 11 cases and in core proceedings "arising under title 11, or arising in a case under title 11," the bankruptcy court is empowered to hear, determine, and render final or dispositive judgments or orders, subject only to timely appeal. 28 U.S.C. §§ 157(b)(1), 158. Civil proceedings "related to a case under title 11," however, are not specifically included in this provision, which leads to the conclusion it is not possible to have a core proceeding "related to" a case under title 11. 1 L. King, *Collier on Bankruptcy* ¶ 3.01, at 3–39 (15th ed. 1992). If an action is determined to be a non-core proceeding,[11] no final decree is permitted; instead, the court submits findings of fact and conclusions of law to the district court which eventually enters a final order or judgment. 28 U.S.C. § 157(c)(1). In other words, although the three types of civil proceedings have been blurred for purposes of creating pervasive bankruptcy jurisdiction, exercising jurisdiction is somewhat more focused when the three categories are designated as "core" and "non-core" or "related" proceedings. *Id.*

■ Core proceedings are illustrated in a non-exclusive list set forth in 28 U.S.C. § 157(b) and generally fall into one of four areas: administrative matters, avoiding actions, matters concerning property of the estate, and "others." 1 L. King, *Collier on Bankruptcy* ¶ 3.01, at 3–40.1 (15th ed. 1993). A request for an order to turn over property of the estate is specifically enumerated as a core proceeding. 28 U.S.C. § 157(b)(2)(E). Therefore, it stands to reason this type of claim cannot be "related" to a case under title 11, and, accordingly, the bankruptcy court would be authorized to render its complete disposition of the action.

The broad grant of bankruptcy jurisdiction eliminated some of the time-consuming and costly jurisdictional challenges that oc-

---

**9.** The term "core" proceeding was taken from Justice Brennan's observation that the restructuring of debtor-creditor relations "... is at the core of the federal bankruptcy power." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982).

**10.** 28 U.S.C. § 157(c)(1) makes the distinction between "core" and "non-core" as "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11."

**11.** 28 U.S.C. § 157(b)(3) states the bankruptcy judge:

... shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

curred under the former Bankruptcy Act when bankruptcy courts had limited jurisdiction. *See* H.Rep. No. 595, 95th Cong., 2d Sess. 43–48, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6004–08. At the same time, it was inevitable that not all civil proceedings would be "bankruptcy" in nature and, as such, might be better off left to other courts. In response, 28 U.S.C. § 1334(c) allows the court to abstain from hearing certain types of proceedings and identifies when the court *should* voluntarily abstain and when it *must* abstain.

### C. Mandatory and Voluntary Abstention

■ Mandatory abstention under 28 U.S.C. § 1334(c)(2)[12] only applies to civil proceedings "related" to a case under title 11, not to proceedings "arising under" title 11 or "arising in" a case under title 11. A proceeding is related if it was owned by the debtor when the bankruptcy case was filed and then became part of the estate pursuant to 11 U.S.C. § 541(a); it is also related if it is a proceeding which takes place between non-debtor third parties, for example, a suit between a creditor and guarantor of a debtor's obligation. 1 L. King, *Collier on Bankruptcy* ¶ 3.01, at 3–77 (15th ed. 1992). A broader definition, adopted by many of the circuits, has become the dominant formulation wherein a proceeding is deemed "related" if resolution of a proceeding between non-debtors could "alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *see Fietz v. Great Western Savings*, 852 F.2d 455, 457 (9th Cir.1988); *Wood v. Wood*, 825 F.2d 90, 93 (5th Cir.1987); *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir.1987); *A.H.*

*Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1002 n. 11 (4th Cir.1986).

■ If a proceeding is related to a case under title 11, the court must abstain if it is based upon a state law claim or state law cause of action that "could not have been commenced in a court of the United States absent jurisdiction under this section," so long as such proceeding is commenced and can be adjudicated in a state forum. 28 U.S.C. § 1334(c)(2). The exact language of this provision actually sets forth seven requirements for mandatory abstention:

1) a timely motion must be filed by the party seeking abstention;

2) the action must be based on questions of state law;

3) the proceeding must be related to the bankruptcy case as opposed to being an actual case or core proceeding;

4) the proceeding must be an action for which there is no independent federal jurisdiction absent the petition under title 11;

5) the action is commenced in a state court;

6) the action may be timely adjudicated in a state forum; and

7) a state forum of appropriate jurisdiction exists.

28 U.S.C. § 1334(c)(2); *In re Baldwin Park Inn Associates*, 144 B.R. 475, 479 (C.D.Cal. 1992); *In re Consulting Actuarial Partners, Ltd. Ptn.*, 72 B.R. 821, 828 (Bankr. S.D.N.Y.1987); *In re Bowen Corporation, Inc.*, 150 B.R. 777 (Bankr.D.Ohio 1993); *In re World Solar Corp.*, 81 B.R. 603, 606 (Bankr.S.D.Cal.1988).

■ In contrast, voluntary abstention under Section 1334(c)(1) applies to *all* categories of civil proceedings—core matters as well as related matters, and so in this sense, voluntary abstention is broader than mandatory abstention since it applies to a broader range of proceedings. 1 L. King,

---

**12.** In pertinent part, 28 U.S.C. § 1334(c)(2) states:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an

action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

*Collier on Bankruptcy* ¶ 3.01, at 3–73, –74 (15th ed. 1992). Voluntary abstention is based on a flexible standard which entails a finding that a particular proceeding is best handled outside the bankruptcy arena in order to sustain interests of justice, comity, or respect for state law. 28 U.S.C. § 1334(c)(1); *In re Heslar,* 16 B.R. 329 (Bankr.W.D.Mich.1981). Essentially, voluntary abstention is appropriate when an action is a traditional matter for civil courts or involves issues in which the bankruptcy judge lacks special expertise, particularly when the litigation is likely to be lengthy and the bankruptcy calendar is currently crowded.[13] George M. Treister, Et al., *Fundamentals of Bankruptcy Law* 61 (1986).

Notwithstanding these basic considerations, some courts view a request for voluntary abstention as an extraordinary, narrow exception to the general rule that federal courts have a duty to adjudicate a controversy properly before it, and, therefore, abstention "should be exercised sparingly and cautiously." *In re Charter Co.,* 82 B.R. 602, 603 (Bankr.M.D.Fla.1988), quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Ronix Corp. v. City of Philadelphia,* 82 B.R. 19, 20 (E.D.Pa.1988); *In re Ionosphere Clubs, Inc.,* 108 B.R. 951, 954 (Bankr.S.D.N.Y.1989); *In re Kolinsky,* 100 B.R. 695 (Bankr.S.D.N.Y.1989). Following this rule, many bankruptcy courts find they can rule on a state court issue sooner than the alternative state court and,

for that reason, may be unwilling to abstain. *In re Charter Co.,* 82 B.R. at 603; *In re Climate Control Engineers, Inc.,* 51 B.R. 359, 362 (Bankr.M.D.Fla.1985). The following litmus test is also offered to assist decisions of voluntary abstention: "When the state issue is of substantial public importance, abstention would not hinder reorganization, and little or no state precedent exists to help guide the bankruptcy court, abstention is particularly appropriate." 3 Epstein, Nickles & White, *Bankruptcy: Practitioner Treatise Series* § 12–6, at 211 (1992); *In re Titan Energy, Inc.,* 837 F.2d 325, 330 (8th Cir.1988); *In re Oliver's Stores,* 107 B.R. 40 (D.N.J.1989); *In re Naugatuck Dairy,* 106 B.R. 24 (Bankr.D.Conn.1989); *In re Charter Co.,* 82 B.R. 602 (Bankr.M.D.Fla.1988).

## ANALYSIS

In this case, a disintegrated domestic relationship is at the root of an adversary action for turnover of property and money to the estate and for rejection of an executory contract. These roots are entangled with this title 11 case, therefore, bankruptcy jurisdiction exists. *In re French,* 139 B.R. at 482; 28 U.S.C. § 1334(a), (b), (d). The extent the Court can exercise its jurisdiction turns on whether Debtor's complaint constitutes a "core" or "related" proceeding under 28 U.S.C. § 157(b). The adversary action is not a proceeding between non-debtors whose outcome might alter or affect the amount of property available for distribution to bankruptcy creditors, which

---

**13.** The Ninth Circuit endorses the evaluation of 12 factors before making a decision to voluntarily abstain:

1) Any effect abstention may have on the efficient administration of the estate;
2) The extent state law issues predominate over bankruptcy issues;
3) The difficulty or unsettled nature of the applicable law;
4) If there is any related proceeding commenced outside of bankruptcy court;
5) Any basis for jurisdiction other than 28 U.S.C. § 1334;
6) How related or remote the proceeding is to the bankruptcy case;
7) The substance rather than the form of the asserted core proceeding;

8) The feasibility of separating the state law claim from the bankruptcy core proceeding in order to permit judgments to be entered in state court but enforced by the bankruptcy court;
9) The burden to the bankruptcy court docket;
10) The likelihood that commencing the proceeding in bankruptcy court involves forum shopping by one of the parties;
11) The existence of any right to a jury trial; and
12) The presence of any non-debtor in the proceeding.

*In re Bowen Corporation, Inc.,* 150 B.R. 777 (Bankr.D.Ohio 1993), *citing Christensen v. Tuscon Estates, Inc.,* 912 F.2d 1162, 1167 (9th Cir. 1990). *See also In re Republic Reader's Serv., Inc.,* 81 B.R. 422, 429 (Bankr.S.D.Tex.1987).

means the adversary action is not a "related" or "non-core" proceeding. *Fietz v. Great Western Savings*, 852 F.2d 455, 457 (9th Cir.1988); *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc.*, 810 F.2d at 786. The unlimited "laundry list" in 28 U.S.C. § 157(b) identifies a turnover action as a core proceeding that "arises in" or "arises under" a title 11 case. In addition, "a core determination depends not so much on whether the resolution of the proceeding may be affected by state law, but 'upon its relation to the basic function of the bankruptcy court.'" *In re Kolinsky*, 100 B.R. at 701, *citing In re Arnold Print Works, Inc.*, 815 F.2d 165 (1st Cir.1987). Debtor's adversary action is related to the basic function of determining what constitutes property of the bankruptcy estate, and because it would have no existence outside this bankruptcy case, it is properly designated as a core proceeding. *Wood v. Wood*, 825 F.2d at 97. Due to this designation, the Court is able to hear, determine, and render complete disposition, subject only to the issue of abstention. 28 U.S.C. § 157(b)(1).

 Mandatory abstention is inapplicable to core proceedings. *In re Ionosphere Clubs, Inc.*, 108 B.R. at 954; *In re Kolinsky*, 100 B.R. at 703; *see e.g., In re Tidwell Industries, Inc.*, 87 B.R. 345, 348 (Bankr. E.D.Pa.1988); *In re Baptist Medical Center*, 80 B.R. 637, 645 (Bankr.E.D.N.Y.1987); *In re Sun West Distributors, Inc.*, 69 B.R. 861, 866 (Bankr.S.D.Cal.1987). Accordingly, a motion for abstention must sound in the voluntary abstention provisions under 28 U.S.C. § 1334(c)(1). The Court believes a case-by-case approach using existing case law guidelines and factors is the best method of making its determination. *In re French*, 139 B.R. at 482–83.

Commonly, decisions of voluntary abstention are based on fact patterns that include pending divorce litigation, unresolved motions to modify child support obligations, or disputes over awards of alimony, which lead to the generalization that matters concerning domestic relations are best resolved by state courts. *Id.* at 482; *White v. White*, 851 F.2d 170, 173 (6th

Cir.1988); *Boyd v. Robinson*, 741 F.2d 1112 (8th Cir.1984); *In re El–Amin*, 126 B.R. 855, 858 (Bankr.E.D.Va.1991). In this case, however, there is no pending divorce and no modification battle over alimony or support inasmuch as the PSA did not provide for these items, nor is there any remaining mystery as to how the marital assets will be divided. The parties entered into an agreed-upon division of property which was approved by the state court when the decree of marriage dissolution was entered. The general rule that instinctively defers matters of family law to alternative state courts in interests of justice, comity, or respect does not easily square with the facts of this case.

 Debtor's bankruptcy estate is made up of all legal and equitable interests held at the time of filing, part of which are the subject of the PSA and, as such, may be ascertainable by the Court as it considers the allegations of the adversary complaint. The provisions of a Chapter 11 plan are most properly based on a complete understanding of property belonging to the estate. In this case, the Court is not entirely convinced the thrust of the adversary action is an attempt to undo or modify the PSA. Rather, Debtor has indicated long-term insolvency compelled this petition to be filed. Where it does not appear the complaint is setting aside adjudicated rights reached by the state court divorce proceeding but, rather, is a good faith attempt to ascertain property of the estate for purposes of a successful and effective reorganization, the Court tends to lean away from voluntary abstention.

Other factors support this tendency. First, this Court has always practiced the belief that all courts have a serious responsibility to accept and determine all matters properly before them, no matter how difficult, tedious, or unappealing they may be. *In re Krisle*, 54 B.R. 330, 346 (Bankr. D.S.D.1985). This philosophy is in sync with other courts that exercise abstention sparingly and cautiously. Debtor's turnover complaint concerns the overall bankruptcy estate and will affect the framework with which to reorganize. For this

reason, the action is properly before the Court. Second, where the bankruptcy court is administering a complex reorganization which conflicts with other court proceedings, "equity favors the unfettered authority of the bankruptcy court to proceed expeditiously and without the time-consuming and costly distraction of other litigation." *In re Ionosphere Clubs, Inc.*, 108 B.R. at 955. *See In re Baldwin–United Corp.*, 765 F.2d 343, 348 (2d Cir.1985). Unfortunately, it appears the Nebraska state court is unable to expeditiously resolve the outstanding questions and concerns Debtor and Defendant have raised concerning the PSA. Several years have passed since the PSA was final, yet the parties still lack the clarification and determinations sought in the state court forum. On the other hand, this Court's calendar is current and is anticipated to remain that way considering the unusually light caseload maintained by the bankruptcy courts in this state. Because the Court is concerned with the proper, expeditious administration of this pending bankruptcy reorganization, the adversary matter should be contained in the bankruptcy court forum. Third, the bankruptcy court is also the more appropriate forum due to the number of potentially affected parties. Since 1989, Debtor and Defendant have been able to continue a relationship of animosity by filing various assorted pleadings and responses concerning the PSA and decree of divorce, but with the advent of Debtor's petition for relief, this ongoing arrangement potentially affected Debtor's creditors adversely in that assets and funds dealt with by the PSA and subject to state court proceedings might continue to diminish. Rendering a decision in the adversary complaint will resolve these questions and provide an ascertainable description of property belonging to the estate. Given the untimely nature of the state court proceedings thus far, the Court's voluntary abstention would hinder Debtor's ability to reorganize.* Fourth, there are no peculiar domestic relations issues centered on Nebraska state law. It appears the Court will

need to interpret and apply South Dakota partnership law and federal income tax provisions to resolve the outstanding disputes and confusion regarding the marital assets as well as the more predominant bankruptcy issues raised by the allegations of the adversary complaint.

## CONCLUSION

The motion requesting the Court to abstain from deciding Debtor's adversary complaint for turnover of estate property and for rejection of an executory contract turns on the voluntary abstention provisions of 28 U.S.C. § 1334(c)(1) inasmuch as the adversary action is a core proceeding. Even though the roots of the adversary matter are grounded in Debtor's marital dissolution proceeding, that matter is no longer pending, and, in fact, the parties reached a property settlement agreement approved by the Nebraska state court at the time the divorce decree was entered. Without success, however, the parties have tried for several years to obtain several clarifications concerning the agreed-upon division of property in a state court forum. At this point in time, Debtor needs to move forward with a Chapter 11 plan of financial reorganization—a plan that is based on ascertainable property of the estate. The Court concludes that if it were to abstain from hearing and deciding the adversary action properly brought in the bankruptcy court forum, Debtor's ability to reorganize would be hindered and all affected parties would be negatively impacted. In the interest of justice, the Court believes it should step in and provide some finality to the lingering, left-over issues related to the divorce agreements by applying South Dakota partnership law and federal income tax law in the context of this bankruptcy proceeding. For all these reasons, the Court will refuse the motion to abstain. The Court shall enter an appropriate order.

---

* This statement is emphasized by the fact that while preparing this decision for publication, the Court learned that the Nebraska state court

judge involved in the various pending matters passed away March 26, 1993.