In re BOWEN CORPORATION, INC., an Idaho corporation; Marina At Harbor Center, Inc., an Idaho corporation; Osprey At Harbor Center, Inc., an Idaho corporation; and Harbor Center, Ltd., an Idaho limited partnership, Plaintiffs,

v.

SECURITY PACIFIC BANK IDAHO, F.S.B., a federally chartered banking institution, and the successor-in-interest of Mountain West Savings Bank, a federally chartered banking institution, formerly known as First Federal Savings and Loan Association of Coeur d'Alene; Prime Financial Partners, L.P., a Delaware Limited Partnership; Metropolitan Mortgage and Securities Company, Inc., a Washington corporation d/b/a Washington Financial Services; ABC Corporations 1–50; XYZ Entities 1–50; and John/Jane Does 1–100, Defendants.

MOUNTAIN WEST SAVINGS BANK, Third Party Plaintiff,

v.

Alfred J. BOWEN and Cheryl A. Bowen, husband and wife, Third Party Defendants.

Bankruptcy No. 92A–6324.

United States Bankruptcy Court, D. Idaho.

Feb. 19, 1993.

Alan A. Meda, The Law Offices of Robert M. Cook, Alan A. Meda and Associates, Phoenix, AZ, for plaintiffs.

Scott W. Reed, Coeur d'Alene, ID, for defendants.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

This adversary proceeding is a state court action removed to this Court on December 8, 1992. Plaintiff Bowen Corporation, Inc. ("debtor"), is the debtor-in-possession in a chapter 11 case pending in Arizona. Bowen Corporation, Inc. has moved that venue for the removed adversary proceeding be transferred to the United States Bankruptcy Court for the District of Arizona. Defendants Security Pacific Bank Idaho, F.S.B., Mountain West Savings Bank ("Mountain West"), and Metropolitan Mortgage and Securities Co. ("Metropolitan"), have moved this Court to abstain, or in the alternative to remand the action to the state court.

### FACTS

The factual background of this case is complex. Therefore, only relevant facts and allegations are set forth. These allegations have mainly been assembled from the pleadings in the state court case and uncontested factual allegations submitted with the motions.

The action arises out of a series of lending agreements. In 1984, Bowen Quality Corporation ("BQC") and Harbor Center Limited Partnership ("Harbor Center Ltd."), together with others, built and developed Harbor Center, an office complex and restaurant facility in Coeur d'Alene. BQC also built a marina facility, owned by debtor and operated by Marina at Harbor Center, Inc. ("Marina at Harbor"). In 1984, BQC and Harbor Center Ltd. trans-

ferred their interests in Harbor Center to Alfred and Cheryl Bowen (collectively, "the Bowens"). That same year, the Bowens gave a promissory note, secured by a deed of trust for Harbor Center, to Mountain West in exchange for a $3.4 million loan. Other equipment owned by Marina at Harbor and Osprey at Harbor Center, Inc. ("Osprey at Harbor"), was also pledged as collateral for this loan. In 1988, this loan was renegotiated, substituting a new promissory note and deed of trust for those executed in 1984. Marina at Harbor, Osprey at Harbor, and Harbor Center Ltd. were guarantors of the Bowens under the new agreement, and additional security was offered.

Later in 1988, the Bowens began to negotiate with Prime Financial Partners, L.P. ("Prime")[1] to transfer Harbor Center to Prime and resolve certain indebtedness between the parties. On December 30, 1988, the Bowens and Prime entered into a Settlement Agreement. A second, collateral agreement, the effect of which has been the subject of much controversy, was also signed at the same time by the Bowens and Prime.

On the same date the Settlement Agreement was signed (December 30, 1988), BQC filed a petition under chapter 11 of the Bankruptcy Code in the District of Arizona. The Settlement Agreement was submitted in the BQC case for approval, and the bankruptcy judge approved the settlement agreement on October 30, 1989.

Pursuant to the terms of the Settlement Agreement, the Bowens had executed a warranty deed purporting to transfer Harbor Center to Prime. Prime subsequently recorded this warranty deed on or about January 5, 1989. On January 24, 1989, Prime entered into an assumption agreement with Mountain West to assume the obligations of the Bowens under the 1988 loan renegotiation. Prime subsequently executed and delivered to Mountain West an Agreement for Deed in Lieu of Foreclosure and a quit-claim deed for Harbor Center on December 28, 1989. A few days

later Mountain West prepared and filed a Notice of Default regarding the 1988 loan obligations, and issued a Notice of Trustee Sale of Harbor Center. The trustee sale, as well as a sale of the other collateral for the 1988 loan agreement, were subsequently cancelled.

In April, 1990, Mountain West and Metropolitan began to negotiate for Metropolitan to purchase Harbor Center. On June 29, 1990, Mountain West conveyed a warranty deed to Metropolitan for Harbor Center, and also transferred all of the rights Mountain West had in other collateral under the security agreement. Metropolitan subsequently transferred all of its interest in Harbor Center to Metropolitan Financial Services pursuant to a corporation deed.

Plaintiffs allege that the collateral agreement, signed in connection with the Settlement Agreement, made the Settlement Agreement contingent on the Bowen's obtaining financing under the collateral agreement. The Bowens allegedly transferred all of their interest in Harbor Center, as well as all of their rights under the security agreement, to the debtor on May 1, 1989. Mountain West allegedly knew of both the Settlement Agreement and the second, collateral agreement between the Bowens and Prime. The transfer of the property from Mountain West to Metropolitan allegedly occurred with Metropolitan's knowledge of the plaintiffs' claims to the property transferred. Plaintiffs' complaint brings four causes of action: action to quiet title, breach of the covenant of good faith and fair dealing, wrongful foreclosure, and breach of contract.

Defendants deny these allegations. They also strongly suggest that the debtor, like the other entities listed as plaintiffs here, are merely alter egos of the Bowens. In addition, defendants have brought numerous counterclaims against the plaintiffs: sums due and owing under the Settlement Agreement, foreclosure of the various security interests, breach of contract, and fraud.

---

1. While Prime is listed as a defendant in this action, defendants have alleged that Prime is currently in bankruptcy, and is no longer actively participating in this case.

This action was initially filed by the plaintiffs on July 16, 1990, in the United States District Court for the District of Idaho, Civil No. 90–0374–N–HLR. Defendants moved to dismiss for lack of federal jurisdiction. Plaintiffs then voluntarily dismissed their case and refiled in Idaho state court on August 23, 1990. A jury trial was requested. Defendants filed a third-party complaint against the Bowens individually, based on the loan guarantees. The third party complaint was submitted to arbitration, and eventually Mountain West obtained a judgment against Alfred Bowen for $3,196,052.51.

A date was set for jury trial on January 4–15, 1993, by the pre-trial order issued by the state court in the summer of 1991. Defendants requested that the trial date be vacated because of the failure of the Bowens to appear for a deposition.

On October 13, 1992, defendants filed a motion for summary judgment. The debtor filed its chapter 11 petition in the United States Bankruptcy Court for the District of Arizona the same day. The motion for summary judgment was set for hearing at 4 p.m. on December 8, 1992. At 2:28 p.m. on December 8, plaintiffs removed the action to this Court.

In addition to disagreeing about the facts, the parties even disagree over how far the state court action had proceeded toward trial. Debtor contends there was never a firm trial date, and that only preliminary discovery had begun before the case was removed to this Court. Defendants hotly contest these allegations, stating there was a firm trial date that was vacated only after the Bowens failed to appear for their deposition. Defendants also state that document production has involved thousands of pages, and that the plaintiffs' failure to comply with discovery requests has resulted in an award of sanc-

tions. Defendants have submitted portions of the state court record that show: (1) at least two sets of interrogatories and requests for production were served on plaintiffs and answered; (2) the state court has granted at least two motions to compel answers to interrogatories; (3) the state court granted judgment against Alfred Bowen on the third party complaint; (4) the state court granted sanctions against the Bowens for failure to appear at their deposition by vacating the January trial date; and (5) the state court dismissed two plaintiffs as improper parties lacking capacity to sue.

## DISCUSSION

The order in which the various motions should be considered will be first discussed. Certain motions implicate the ability of a bankruptcy court to hear the case, and one of these (mandatory abstention) leaves no discretion with the court if its elements are found to exist. Accordingly, it is appropriate to consider the motions in the following order: mandatory abstention under 28 U.S.C. § 1334(c)(2); discretionary abstention under 28 U.S.C. § 1334(c)(1) and remand under 28 U.S.C. § 1452(b).

## MANDATORY ABSTENTION

Section 1334 of Title 28 of the United States Code provides that the district court must abstain from exercising jurisdiction over a case under certain circumstances.[2] Mandatory abstention requires seven elements: (1) A timely motion by the party seeking abstention; (2) the action involves purely state law questions; (3) the action is "related to a case under title 11;" (4) there is no independent federal jurisdiction over the action absent the petition under Title 11; (5) the action is commenced in a state court; (6) the state court action may be timely adjudicated;

---

**2.** Section 1334(c)(2) provides in its pertinent part:
 (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been com-

menced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.
28 U.S.C. § 1334(c)(2).

and (7) a state forum of appropriate jurisdiction exists. 28 U.S.C. § 1334(c)(2). *Cf. Baldwin Park Inn Assoc. v. City of Baldwin Park (In re Baldwin Park Inn Assoc.),* 144 B.R. 475, 479 (C.D.Cal.1992); *World Solar Corp. v. Steinbaum (In re World Solar Corp.),* 81 B.R. 603, 606 (Bankr.S.D.Cal.1988).[3]

### 1. *Motion Must Be Timely Filed.*

■ The first requirement is that the motion for abstention be timely filed. Plaintiffs filed their motion to remove this case on December 8, 1992. Defendants filed their motion to abstain or remand on December 14, 1992. Six days after removal of the case from state court is timely. Therefore, the first prong of the mandatory abstention test is met.

### 2. *Action Involves Purely State Law Questions.*

The second prong of the mandatory abstention test requires that the action involve purely state law questions. All of the alleged claims and counterclaims asserted by the parties to this action are based on state law. No claim or counterclaim is founded in federal law. Accordingly, the second prong of the test is met.

### 3. *Action is "Related to a Case Under Title 11."*

■ The third prong of the test required for mandatory abstention is that the action is "related to a case under title 11 but not arising under title 11 or arising in a case under title 11." 28 U.S.C. § 1334(c)(2). "Related to a case under title 11," "arising under title 11," and "arising in a case under title 11" are terms of art. The Ninth Circuit recently stated:

"Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.... The meaning of 'arising in' proceedings is less clear, but seems to be a reference to those 'administrative' matters that arise *only* in bankruptcy cases. In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."

*Eastport Assoc. v. City of Los Angeles (In re Eastport Assoc.),* 935 F.2d 1071, 1076 (9th Cir.1991) (quoting *In re Wood,* 825 F.2d 90, 96–97 (5th Cir.1987)). "Related to a case under title 11," in contrast, is a much broader term.

"The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* [citations omitted]. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate."

*Fietz v. Great Western Savings (In re Fietz),* 852 F.2d 455, 457 (9th Cir.1988) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original)).

Bowen Corporation, one of the plaintiffs in this case and allegedly the owner of the real property at issue, is a chapter 11 debtor-in-possession under the provisions of Title 11 United States Code. Any verdict in this action would have an effect on the debtor's bankruptcy, because it would either confirm or deny the debtor's right to

---

**3.** Both of these cases characterize the third prong of the test as requiring that the case be a noncore proceeding. The statute states that the case must be "related to a case under title 11 but not arising under title 11 or arising in a case under title 11." 28 U.S.C. § 1334(c)(2). The Ninth Circuit has stated that core proceedings are cases arising under Title 11 or arising in a case under Title 11, while "related to" cases are noncore proceedings. *Eastport Assoc. v. City of Los Angeles (In re Eastport Assoc.),* 935 F.2d 1071, 1076 (9th Cir.1991). This Court characterizes the third prong of the test as 'whether the case is related to a case under Title 11' in order to more accurately track the language of the statute, though this does not create any difference in substantive law.

recover for its causes of action. However, "the adversary proceeding does not arise under or arise in a case under title 11 because it is not a cause of action created by title 11 or one that only arises in title 11 cases." *Eastport, supra,* 935 F.2d at 1077. The fact that the Settlement Agreement that is the source of many of the disputes in this case was approved by an Arizona bankruptcy court is beside the point. That approval was granted as part of BQC's bankruptcy; BQC is not a party to this action. In addition, this approval seems to have been largely concerned with the matter of lifting the automatic stay as regards collateral of BQC. It is also noted, despite this asserted connection with a bankruptcy case, the debtor chose to bring this action in Idaho state court. Therefore, these actions are noncore, "related to" proceedings under Title 11.

### 4. Only Basis for Federal Jurisdiction Is Bankruptcy.

The fourth prong of the test is that there is no basis for federal jurisdiction other than under 28 U.S.C. § 1334. No federal causes of action have been pleaded, and accordingly there is no federal question jurisdiction here.

 Diversity jurisdiction requires, among other things, that there be complete diversity of citizenship; that is, every plaintiff must be of diverse citizenship from every defendant. 1 James W. Moore, *Moore's Federal Practice* ¶ 0.71 [5.–2], at 739 (1992). Corporations are deemed to be citizens of two states: the state in which it is incorporated, and the state where the corporation has its principal place of business. 28 U.S.C. § 1332(c)(1). A partnership is considered to be a citizen of every state of which its partners are citizens. 1 *Moore's, supra,* at ¶ 0.74 [6.–9], at 800.22–.23. Similarly, a limited partnership is considered to be a citizen of every state of which both its general and limited partners are citizens. *Id.*

 It appears that there is no diversity jurisdiction in this case, though the record is sparse on the question of the citizenship of some of the defendants. Given the restrictions on interstate banking, however, Security Pacific Bank Idaho, F.S.B., almost certainly has its principal place of business in Idaho. The same is also probably true of Mountain West Savings Bank, formerly First Federal Savings and Loan of Coeur d'Alene. Diversity is destroyed because the debtor, Marina at Harbor, and Osprey at Harbor are all Idaho corporations.

Moreover, it appears that diversity jurisdiction has been questioned before. This action was originally filed as a federal court action in the U.S. District Court for the District of Idaho. Defendants moved to dismiss for lack of federal jurisdiction. Prior to any order being issued by the court, plaintiffs voluntarily dismissed their action and refiled it in state court. The debtor does not contend diversity jurisdiction exists. The Court therefore finds that the fourth prong of the mandatory abstention test has been met.

### 5. Action is Commenced in State Court.

 The fifth requirement is that an action "is commenced" in state court. The fact that there is no state court action pending at this time (such action having been removed to this Court), does not mean that this prong is not met.

> The use of the word "commenced" in section 1334(c)(2) does not require that a state court action be pending at the time abstention by the bankruptcy court is sought; rather, it indicates that a similar state action must have been commenced at some point in time before the court considers abstention.

*Baldwin Park Inn, supra,* 144 B.R. at 481. Here, this case has been pending in state court since August, 1990. Accordingly, the fifth prong of the mandatory abstention test is met.

### 6. State Court Action Could Be Timely Adjudicated.

 The sixth prong of the test is that the state court action could be timely adjudicated. As just mentioned, this case has been pending in state court since August, 1990. Trial in the case was scheduled for

January 4–15, 1993, but was vacated at the request of the defendants when the Bowens failed to appear at a deposition and produce documents. At the time the action was removed to this Court, defendants' motion for summary judgment had been submitted and was pending before the state court. Defendants have presented no evidence regarding when trial would have been rescheduled. However, it is apparent from the record that the state court, already familiar with the issues in this case, could adjudicate this matter much more quickly than could any bankruptcy court, which would have to begin anew. The sixth prong of the test is met.

### 7. State Court of Appropriate Jurisdiction Exists.

■ The final requirement for mandatory abstention is that a state court of appropriate jurisdiction exist. This prong is clearly met by the fact that this action had been prosecuted in state court for 1½ years.

■ Debtor argues that neither plaintiffs or defendants have sought relief from the automatic stay. The existence of the automatic stay, however, is not relevant to the question of whether bankruptcy courts should exercise jurisdiction over a matter. If a violation of the automatic stay has taken place, debtor is free to seek its remedies under 11 U.S.C. § 362.

### DISCRETIONARY ABSTENTION

■ The Ninth Circuit has established 12 factors to be evaluated in determining whether discretionary abstention is appropriate:

"(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the juris-

dictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties."

*Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir.1990) (quoting *In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 429 (Bankr.S.D.Tex.1987)).

There is a beneficial effect on the administration of the estate if the Court recommends abstention, since the state court will decide the issue much more quickly than could any court new to the case.[4] State law issues predominate over bankruptcy issues in the instant controversy. There are, so far as the record indicates, no bankruptcy issues whatsoever. Factors 1, 2, and 4 therefore favor discretionary abstention under the *Tucson Estates* analysis.

The fifth factor is the presence of a jurisdictional basis other than 28 U.S.C. § 1334. As discussed previously, section 1334 is the only statute under which a federal court could assert jurisdiction over this case. Accordingly, this factor favors discretionary abstention.

Determination as to whether this proceeding is core or noncore is relevant to the sixth, seventh, and twelfth factors of this test. *Eastport, supra*, 935 F.2d at 1076. It has already been noted this action is a "related to" proceeding, and that "related to" proceedings are noncore. *See* note 4, *supra*. The core/noncore distinction is also codified by statute, however, and con-

---

4. The Court also notes that, as a noncore proceeding, this action would be subject to de novo review by the district court. 28 U.S.C. § 157(c)(1). This would further delay progress of this action, should this (or any) bankruptcy court retain jurisdiction.

sideration of that statute is therefore appropriate.

■ Section 157 of Title 28 of the United States Code provides that bankruptcy courts may hear and determine core proceedings.[5] The statute then contains a nonexclusive list of proceedings that are "core." 28 U.S.C. § 157(b)(2)(A)–(O). A determination a proceeding is core cannot be made solely on the basis that resolution is affected by state law. 28 U.S.C. § 157(b)(3).

■ Debtor contends this action is a core proceeding under section 157(b)(2)(A), "matters concerning the administration of the estate;" subsection (C), "counterclaims by the estate against persons filing claims against the estate;" subsection (K), "determinations of the validity, extent, or priority of liens;" and subsection (O), "other proceedings affecting ... the adjustment of the debtor-creditor ... relationship." There is no logic by which the language of (C), requiring a counterclaim by the estate against a party asserting a claim against the estate, can be twisted to include an action in which the debtor is a plaintiff, and both the action and defendants' counterclaims were brought before a bankruptcy estate was in existence.

■ Subsection (K) is also inapplicable. The subject matter of this action is not concerned with the validity, extent, or priority of liens; there is no allegation in the complaint or counterclaims that the security interests were improperly perfected, or that one party has a prior perfected security

ty interest, or that certain property was not included within the scope of the security agreement. None of the avoidance powers under the Bankruptcy Code are being utilized. This action deals with purely state law questions (primarily issues of contract interpretation), not "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power." *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982).

■ Subsections (A) and (O) are inapplicable as well. The Ninth Circuit has held "state law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections 157(b)(2)(A) and (O)." *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)*, 781 F.2d 159, 162 (9th Cir.1986). As a "related to" claim containing only state law issues, this action is analogous to a state law contract claim. The case falls within none of the specific sections listed in subsections (B) through (N), and accordingly is not "core" under subsections (A) or (O). The seventh factor therefore favors abstention.

Sixth is the degree of relatedness or remoteness to the main bankruptcy case. As already discussed, this action in a noncore, "related to" proceeding, subject to bankruptcy jurisdiction only by the fortuity that

---

5. Section 157 provides in part:
 (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
 (2) Core proceedings include, but are not limited to—
 (A) matters concerning the administration of the estate;
 * * *
 (C) counterclaims by the estate against persons filing claims against the estate;
 * * *
 (K) determinations of the validity, extent, or priority of liens;

 * * *
 (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
 (3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.
 28 U.S.C. § 157(b)(1)–(3).

one of the parties is a debtor in a case under Title 11 of the United States Code.

■ Moreover, this action appears to bear little relation to the Title 11 case. Debtor argues strenuously that the fact the Settlement Agreement was approved by the U.S. Bankruptcy Court for the District of Arizona makes that court the appropriate one to hear this action. This ignores the fact the Settlement Agreement was approved in a different bankruptcy case than the debtor's case, and that BQC is not a party to this action. The mere fact this action deals with the sole asset of the debtor is also beside the point. In the absence of issues peculiar to bankruptcy, there is no compelling reason why a bankruptcy court should be required to revisit matters that can just as easily be resolved in a state court proceeding. This is particularly so where the action in the state court is substantially under way, and where the noncore nature of the proceeding would prevent the bankruptcy court from entering a final order in the case.

There are no problems involved in severing bankruptcy core matters from state law claims, so that the state court can enter a judgment with enforcement left to the bankruptcy court. While information regarding burden on the Arizona bankruptcy court's docket has not been presented, conservation of court resources favors returning the action to the state court, which already has some familiarity with the action. The debtor's filing of its removal proceeding just before the hearing on the motion for summary judgment, in light of the fact that it was the debtor and the other plaintiffs who selected the state court's forum, strongly suggest elements of forum shopping. Defendants have requested a jury trial on several of the claims asserted in this case, and appear to be entitled to one. The majority of the parties to this case are nondebtors; only one of the four listed plaintiffs,[6] and one of five defendants, is in bankruptcy.[7] Therefore, factors 8, 9, 10, 11, and 12 also favor abstention.

Only the third *Tucson Estates* factor does not favor abstention. While the facts are complex, there is no indication that the legal issues upon which a verdict will turn are in any way difficult or unsettled.

Under the *Tucson Estates* analysis, the facts of this case heavily favor the exercise of discretionary abstention under 28 U.S.C. § 1334(c)(1). Therefore, even if this case were not subject to mandatory abstention, I find discretionary abstention would nonetheless be appropriate.

## CONCLUSION

Accordingly, it is concluded this action is subject to mandatory and discretionary abstention, and the case will be remanded to the state court pursuant to 28 U.S.C. § 1452(b).[8] *See Baldwin Park Inn, supra,* 144 B.R. at 481. The motion for a change of venue is moot.

A separate order will be entered.

---

6. While the case caption retains their names, the Court notes that the record contains an order entered in the state court action dismissing plaintiffs Marina at Harbor and Osprey at Harbor with prejudice, because they lack capacity to sue. *See* Order Granting Motion to Dismiss Plaintiffs Marina at Harbor Center, Inc. and Osprey at Harbor Center, Inc., entered October 29, 1992.

7. Prime has entered bankruptcy, and defendants indicate it has largely, if not entirely, withdrawn from the action.

8. Section 1452 provides in part that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b).