FILED

JUN 03 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   NV-14-1528-FBD |
| PETER SZANTO, | ) | Bk. No.   3:13-51261-GWZ |
| Debtor. | ) | Adv. No.  3:14-05003-GWZ |
| _____ | ) | |
| PETER SZANTO, | ) | |
| Appellant, | ) | |
| v. | ) | **MEMORANDUM**[*] |
| JOSEPH M. BISTRITZ, | ) | |
| Appellee. | ) | |
| _____ | ) | |

Submitted Without Argument on May 19, 2016

Filed – June 3, 2016

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce T. Beesley, Chief Bankruptcy Judge, and
Gregg W. Zive, Bankruptcy Judges, Presiding

_____

Appearances:    Appellant Peter Szanto, pro se, on brief;
John S. Bartlett on brief for Appellee Joseph
Bistritz.

_____

Before: FARIS, BARASH,[**] and DUNN, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, see Fed. R. App. P. 32.1, it has no precedential value, see
9th Cir. BAP Rule 8024-1.

[**] Hon. Martin R. Barash, United States Bankruptcy Judge for
the Central District of California, sitting by designation.

## INTRODUCTION

Appellant/chapter 11[1] debtor Peter Szanto appeals the bankruptcy court's decision to abstain from hearing his adversary proceeding filed against Appellee Joseph Bistritz concerning a residential lease. We AFFIRM.

## FACTUAL BACKGROUND[2]

### A. The Florida litigation

On May 24, 2013, Mr. Bistritz filed suit against Mr. Szanto in Florida state court over Mr. Szanto's lease of a Miami Beach, Florida residential property from Mr. Bistritz in 2009. Mr. Szanto had the option of purchasing the property by January 3, 2011 for $1,100,000. Mr. Bistritz claimed that Mr. Szanto did not exercise the option to purchase the property and the lease expired by its own terms. He sought a judicial declaration that Mr. Szanto had no remaining interest in the residential property.

### B. The Nevada bankruptcy proceedings

While the Florida action was pending, Mr. Szanto filed his chapter 11 petition in the United States Bankruptcy Court for the District of Nevada. The same day, he filed a notice of automatic stay with the Florida state court.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

[2] Mr. Szanto presents us with a limited record. We have exercised our discretion to review the bankruptcy court's docket, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

2

On January 26, 2014, Mr. Szanto initiated the underlying adversary complaint again Mr. Bistritz. Mr. Szanto asserted various causes of action arising out of the lease of the Miami Beach property. He argued that Mr. Bistritz breached the lease agreement by failing to deliver the property to Mr. Szanto (Breach of Contract); that Mr. Bistritz breached his fiduciary duty to Mr. Szanto by not surrendering the property (Breach of Fiduciary Duty); and that his eviction was "subterfuge" for Mr. Bistritz to convert Mr. Szanto's personal property (Conversion).

He alleged that jurisdiction was proper in the Nevada bankruptcy court "because the money and property which the defendant has withheld from plaintiff is part of plaintiff's bankruptcy estate." He also alleged that federal jurisdiction was proper because "there is complete diversity between the parties."

**C.    The motion to abstain**

Mr. Bistritz filed a motion requesting that the bankruptcy court abstain from exercising jurisdiction over the claims raised in the adversary complaint under 28 U.S.C. § 1334(c)(1) and (2) and that the court dismiss the action ("Motion to Abstain"). Essentially, he argued that the adversary complaint alleged only non-core claims that are not dependent on the Bankruptcy Code for their existence and that the factors laid out in Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1167 (9th Cir. 1990), weighed in favor of abstention.

In response, Mr. Szanto argued that complete diversity existed between the parties, thus mandating that Mr. Bistritz's

3

claims be heard in federal court. He also argued that the litigation in Florida state court is a core proceeding because it may potentially add to or affect his bankruptcy estate.

Ultimately, the court granted the Motion to Abstain. It held that the Tucson Estates factors favored discretionary abstention under 28 U.S.C. § 1334(c)(1).

**D.    The motion for reconsideration**

Mr. Szanto filed a motion for reconsideration ("Motion for Reconsideration"), arguing not that the court erred in abstaining, but rather that the order prepared by Mr. Bistritz (and signed by the court) did not accurately reflect the court's ruling. In summary, he contended that the court should not have made any specific ruling concerning its jurisdiction, since it had determined that it would abstain (and therefore should not have gone further to explain its reasoning).

The hearing on the Motion for Reconsideration was delayed for fifteen months because Mr. Szanto claimed that he was too ill to appear.

**E.    Dismissal of the bankruptcy case**

In the meantime, the bankruptcy court dismissed Mr. Szanto's bankruptcy case. The chapter 11 trustee moved to dismiss the case or convert it to chapter 7 because Mr. Szanto failed timely under § 1112(b)(4)(J) to file a disclosure statement. The court granted the motion and dismissed the bankruptcy case with a six-month bar on filing or re-filing any bankruptcy petition.

The district court affirmed the bankruptcy court's order of dismissal. Mr. Szanto appealed the district court's decision to the Ninth Circuit, and that appeal is currently pending.

4

**F.    Ruling on the Motion for Reconsideration**

The court issued its findings of fact and conclusions of law on the Motion for Reconsideration.  It rejected Mr. Szanto's objections to the order on the Motion to Abstain, holding that the court properly analyzed the Motion to Abstain under Tucson Estates.  The court reviewed the hearing transcript and concluded that "the Order prepared by counsel accurately portrayed the oral findings and conclusions . . . ."  The court thus denied the Motion for Reconsideration.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1).  Mr. Szanto's notice of appeal was premature because he filed it before the bankruptcy court decided his Motion for Reconsideration.  Now that the bankruptcy court has entered a final order on the Motion for Reconsideration, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1)  Whether the bankruptcy court erred in abstaining from considering the adversary proceeding in favor of the litigation in Florida state court.

(2)  Whether the bankruptcy court erred in entering the counsel-prepared order on the Motion for Reconsideration, which included a discussion of the court's jurisdiction.

## STANDARDS OF REVIEW

"A bankruptcy court's determination regarding discretionary abstention is fundamentally a matter within the discretion of the court to be reviewed for abuse of discretion."  In re Bankr. Petition Preparers Who Are Not Certified Pursuant to Requirements

5

of Ariz. Sup. Ct., 307 B.R. 134, 140 (9th Cir. BAP 2004) (citations omitted).

Similarly, we review for abuse of discretion the court's decision to decline to exercise jurisdiction over an adversary proceeding after dismissal of the underlying bankruptcy case. Carraher v. Morgan Elecs., Inc. (In re Carraher), 971 F.2d 327, 328 (9th Cir. 1992).

We also review for abuse of discretion the denial of a motion for reconsideration. See N. Alaska Envtl. Ctr. v. Lujan, 961 F.2d 886, 889 (9th Cir. 1992).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1262–63 & n.21 (9th Cir. 2009) (en banc). "If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion." USAA Fed. Sav. Bank v. Thacker (In re Taylor), 599 F.3d 880, 887–88 (9th Cir. 2010) (citing Hinkson, 585 F.3d at 1261–62).

We may affirm on any ground supported by the record. Diener v. McBeth (In re Diener), 483 B.R. 196, 202 (9th Cir. BAP 2012).

**DISCUSSION**

**A.    Abstention and dismissal of the adversary proceeding are proper, because the bankruptcy case has been dismissed.**

By the time the bankruptcy court decided the Motion for Reconsideration, the bankruptcy court had dismissed the main bankruptcy case. This raises the question whether the bankruptcy court could properly have retained jurisdiction of the adversary proceeding.[3] We hold that it would have been an abuse of discretion to retain jurisdiction in these circumstances and that therefore dismissal of the adversary proceeding was required.

In Carraher, the Ninth Circuit laid out a four-part test to determine whether a court should retain jurisdiction over an adversary proceeding after the underlying bankruptcy case has been dismissed. The Ninth Circuit stated:

> In considering what standards govern the bankruptcy court's discretion in determining whether to retain a related case after dismissal of the underlying bankruptcy case, we, like other courts, turn for guidance to cases considering the authority of federal district courts to retain pendent state claims after the federal claims have been dismissed. The Supreme Court has held that where a federal district court dismisses federal claims, **the court must consider economy**, **convenience**, **fairness and comity** in deciding whether to retain jurisdiction over pendent state claims.

In re Carraher, 971 F.2d at 328 (emphasis added) (internal citations omitted); see also Linkway Inv. Co., Inc. v. Olsen

---

[3] Although neither the bankruptcy court nor the parties has addressed the question, we must assure ourselves that subject matter jurisdiction exists. See Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir. 2002) ("a court may raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action, even on appeal").

7

(In re Casamont Inv'rs, Ltd.), 196 B.R. 517, 523 (9th Cir. BAP 1996) ("retention of jurisdiction was found to have been **improper** when the initiation of the dispute was recent, no action had been taken prior to the dismissal and the dispute concerned issues of probate law, in which the state courts had more expertise" (emphasis in original)); Zegzula v. JPMorgan Chase Bank, N.A. (In re Zegzula), BAP No. WW-14-1119-JuKiF, 2015 WL 5786572 (9th Cir. BAP Oct. 2, 2015) (holding that the bankruptcy court did not abuse its discretion in declining to retain jurisdiction over the adversary proceeding when it had previously dismissed the underlying bankruptcy case and found that considerations of judicial economy and fairness did not support the court's retention of jurisdiction over the adversary proceeding).

Applying the Carraher factors to the present case, we conclude that the court had no basis to retain jurisdiction.

First, judicial economy did not favor retention of the adversary proceeding. The adversary proceeding had not progressed beyond the initial pleading stage, and Mr. Bistritz had not answered the complaint. Moreover, the issues raised by the adversary complaint are state law issues that can be resolved expeditiously in state court. See In re Casamont Inv'rs, Ltd., 196 B.R. at 524.

Second, dismissal did not unduly inconvenience either party. There was ongoing litigation in state court regarding the residential lease,[4] and Mr. Szanto could have brought his claims

--------

[4] The Florida state litigation was pending at the time of the hearing and the order on the Motion to Abstain in April 2014.
(continued...)

8

in that forum.  See id.  Although Mr. Szanto said that he is not a resident of Florida, he admitted that he lived there for part of the year, and the full extent of his contact with the forum is unknown.

Third, it was not unfair to require Mr. Szanto to litigate his claims in state court.  The Florida state court was already considering the lease dispute and could have adjudicated Mr. Szanto's claims.  See id.  Traditionally, disputes about real property interests are adjudicated where the property is located. It is not unfair to hold Mr. Szanto to the traditional rule.

Finally, comity favors refusing jurisdiction over the adversary complaint.  Mr. Szanto's claims are straightforward issues of Florida state law that are best decided by the Florida state courts.  See id.

Therefore, retention of jurisdiction over the adversary proceeding following the dismissal of the underlying bankruptcy case would have been an abuse of discretion.

**B.    The bankruptcy court did not abuse its discretion when it decided to abstain.**

The bankruptcy court determined that it had grounds "to abstain from taking jurisdiction over the claims in this adversary proceeding under the provisions of 28 USC § 1334(c)(1), permissive abstention."  The court did not err.

A court may exercise discretionary abstention in bankruptcy proceedings:

---

[4](...continued)
Subsequently, on February 23, 2015, the Florida court dismissed the state court lawsuit.

9

Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

> **1. The bankruptcy court correctly applied the <u>Tucson Estates</u> factors.**

The Ninth Circuit has held that, when deciding whether to abstain, a court must consider:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

<u>In re Tucson Estates, Inc.</u>, 912 F.2d at 1167 (quoting <u>In re Republic Reader's Serv., Inc.</u>, 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987)).

Mr. Szanto addresses only one of the <u>Tucson Estates</u> factors. <u>See</u> section B.2, <u>infra</u>. He attempts to brush the Ninth Circuit's decision aside, saying that <u>Tucson Estates</u> "obfuscates the clear issues" he presents. We cannot, however, simply disregard controlling Ninth Circuit precedent.

10

He also argues that the test only becomes applicable after Mr. Bistritz submitted to the jurisdiction of the bankruptcy court. Neither authority nor logic supports this novel proposition.

The bankruptcy court properly applied the Tucson Estates test. The court specifically addressed the factors and concluded that, on balance, the facts of the case favored abstention: (1) the case can be more efficiently resolved in Florida state court; (2) the case raised "totally a state law issue in state court, in Florida, that's controlled by Florida law"; (3) there is already a related proceeding in Florida; (4) the adversary proceeding is only remotely related to the underlying bankruptcy case; (5) the adversary proceeding is not a core proceeding; (6) it is not feasible to sever the state claims and bankruptcy claims; (7) the court professed suspicion that Mr. Szanto is forum shopping; (8) the bankruptcy court generally lacks power to conduct jury trials; and (9) there are no non-debtor parties (other than Mr. Bistritz) who would be affected by the proceedings.[5]

We find no error in the bankruptcy court's analysis. It correctly identified the operative legal standard and considered the various relevant factors to conclude that abstention was warranted.

---

[5] We note that Mr. Bistritz is not otherwise involved in the bankruptcy proceeding, so there are no other parties affected by the abstention.

11

### 2. Mr. Szanto's adversary complaint did not commence a "core proceeding."

Mr. Szanto argues that his adversary proceeding against Mr. Bistritz was a "core proceeding." Although he does not say so, this relates to the sixth and seventh Tucson Estates factors. Mr. Szanto apparently thinks that a "core proceeding" is one that is important to a particular bankruptcy case. He fails to recognize that "core proceeding" is a term of art in bankruptcy law and that his adversary proceeding is not a "core proceeding."

Some historical background is helpful to understand the meaning of "core proceedings."

In 1978, Congress enacted the Bankruptcy Code, which (among many other things) dramatically increased the powers of bankruptcy judges. The Code "mandated that bankruptcy judges 'shall exercise' jurisdiction over 'all civil proceedings arising under title 11 or arising in or related to cases under title 11.'" Executive Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165, 2170-71 (2014) (citing 28 U.S.C. § 1471(b)-(c)).

In 1982, the United States Supreme Court decided Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982) ("Marathon"). The Court held that Congress had granted too much power to bankruptcy judges who lack the protections of Article III status. Although the Marathon decision is difficult to parse because there was no majority opinion, the holding of the case is that Congress may not empower a judge lacking Article III protections to enter final judgment in a case brought by the representative of a bankruptcy estate against a third party on state law claims (at least where the third party

12

objects).  The Supreme Court concluded that "the broad grant of jurisdiction to the bankruptcy courts" should be struck down so Congress could rewrite it.  Id. at 87.

In an attempt to solve the constitutional problem identified in Marathon, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984.  Congress gave the district courts "original and exclusive jurisdiction of all cases under Title 11," 28 U.S.C. § 1334(a), and "original, but not exclusive, jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11[,]" id. § 1334(b).  Congress created the bankruptcy courts as "units" of the district courts, id. § 151, staffed them with bankruptcy judges appointed to fourteen-year terms by the respective courts of appeal, id. § 152(a), and authorized (but did not require) the district courts to refer to the bankruptcy courts matters falling under bankruptcy jurisdiction, id. § 157(a).

Congress further divided bankruptcy court jurisdiction into "core proceedings" and so-called "non-core" proceedings.  See Executive Benefits Ins. Agency, 134 S. Ct. at 2171 ("The 1984 Act implements that bifurcated scheme by dividing all matters that may be referred to the bankruptcy court into two categories: 'core' and 'non-core' proceedings.  It is the bankruptcy court's responsibility to determine whether each claim before it is core or non-core." (internal citations omitted)).

The distinction between "core" and "non-core" proceedings determines the scope of review of the bankruptcy court's decisions.  The bankruptcy court can enter a final judgment, subject to appellate review under the usual standards, in a "core

13

proceeding," or if all parties consent.  See <u>Battle Ground Plaza, LLC v. Ray (In re Ray)</u>, 624 F.3d 1124, 1130 (9th Cir. 2010), <u>overruled on other grounds by</u> <u>Stern v. Marshall</u>, 563 U.S. 462, 476-77 (2011).

In all other cases, the bankruptcy court must submit proposed findings of fact and a recommended judgment to the district court for de novo review.  <u>See generally</u> <u>Wellness Int'l Network, Ltd. v. Sharif</u>, 135 S. Ct. 1932, 1940 (2015) ("Congress gave bankruptcy courts the power to 'hear and determine' core proceedings and to 'enter appropriate orders and judgments,' subject to appellate review by the district court.  But it gave bankruptcy courts more limited authority in non-core proceedings: They may 'hear and determine' such proceedings, and 'enter appropriate orders and judgments,' only 'with the consent of all the parties to the proceeding.'  Absent consent, bankruptcy courts in non-core proceedings may only 'submit proposed findings of fact and conclusions of law,' which the district courts review de novo." (citations omitted)).

"[A] core proceeding is one that 'invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" <u>In re Ray</u>, 624 F.3d at 1131 (quoting <u>Gruntz v. Cty. of L.A. (In re Gruntz)</u>, 202 F.3d 1074, 1081 (9th Cir. 2000)).  In contrast, proceedings are "related to" a bankruptcy case and thus "non-core" if "they do not depend on the Bankruptcy Code for their existence and they could proceed in another court."  <u>Id.</u> (quoting <u>Dunmore v. United States</u>, 358 F.3d 1107, 1114 (9th Cir. 2004)).

14

This history shows that Congress invented the concept of "core proceedings" to address the constitutional problem identified in Marathon. Therefore, in case of doubt, the statutory definition of "core proceedings" should be interpreted to exclude proceedings in which the constitution precludes a bankruptcy judge from entering final judgment under Marathon, i.e., claims by representatives of the estate against non-consenting third parties to recover money or property for the estate on non-bankruptcy law grounds.

We agree with the bankruptcy court that Mr. Szanto's adversary proceeding is a non-core proceeding. He brought his adversary proceeding against a non-consenting third party allegedly in order to bring into the estate property in which his leasehold interest had terminated by its terms. His claims are based solely on state law and not bankruptcy law. None of his claims depend on the Bankruptcy Code for their existence, and they could be brought independently in state court. Thus, even construing Mr. Szanto's arguments liberally, the sixth and seventh Tucson Estates factors do not weigh in his favor.

**3.  Neither equitable considerations nor the court's supposed "mandate" gives rise to any error.**

Mr. Szanto spends the bulk of his briefs arguing that the court should not have abstained for equitable reasons. He contends that (1) Mr. Bistritz has unclean hands; (2) Mr. Szanto has been mistreated by the court[6] and his opponent; and (3) the

_____

[6] Mr. Szanto overstates his case. He claims that the court's admonition to "sit down or I will have you removed" meant
(continued...)

15

court ignored a "mandate" to adjudicate his claims.

The first two arguments are not among the <u>Tucson Estates</u> factors and are not relevant to the question of abstention.

The third claim is patently incorrect. Mr. Szanto offers no authority for the proposition that the bankruptcy court has a "mandate" to adjudicate every issue raised by a party. To the contrary, the statutory abstention provisions make clear that a bankruptcy court can decline to decide controversies that are within its jurisdiction.

Moreover, it is unclear whether Mr. Szanto presented any of these arguments before the bankruptcy court.

**4.    The automatic stay does not preclude abstention.**

Mr. Szanto argues that the bankruptcy court erred when it decided to abstain before lifting the automatic stay. "The existence of the automatic stay, however, is not relevant to the question of whether bankruptcy courts should exercise jurisdiction over a matter." <u>Bowen Corp., Inc. v. Sec. Pac. Bank Idaho, F.S.B.</u>, 150 B.R. 777, 784 (Bankr. D. Idaho 1993) (citations omitted). It is true that, even after the bankruptcy court abstains in favor of a proceeding in another court, the other proceeding may not resume until the bankruptcy court lifts the automatic stay. It does not follow, however, that the bankruptcy court must lift the stay **before** abstaining.

---

[6](...continued)
that "if he did not sit down, he would be removed from existence, that is - **that he would be killed/exterminated - his right to live would be removed!**" (Emphasis in original.) The bankruptcy judge may have been annoyed, but there is no indication that he was in a murderous rage.

16

In any event, subsequent developments have mooted this argument. The automatic stay terminated when the court dismissed the underlying bankruptcy case in May 2014. See § 362(c)(2)(B). Thus, the automatic stay no longer bars prosecution of the Florida litigation.

**5. Jurisdiction is not exclusive to the bankruptcy court.**

Mr. Szanto also argues that the federal courts have exclusive jurisdiction of his dispute with Mr. Bistritz because he and Mr. Bistritz are of diverse citizenship. Even assuming that Mr. Szanto's representations about citizenship are correct, this argument is wrong.

First, diversity jurisdiction is not exclusive. Diversity of citizenship does not preclude state court jurisdiction. See Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 n.3 (5th Cir. 1996) ("federal diversity jurisdiction permits state and federal courts to exercise **concurrent** jurisdiction" (emphasis in original) (citing Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 809 (1976))); Zora Analytics, LLC v. Sakhamuri, No. 13-CV-00639 JM (WMC), 2014 WL 1289450, at *5 (S.D. Cal. Mar. 27, 2014) ("plaintiffs are not required to file cases in federal court simply because diversity exists").

Second, diversity jurisdiction does not apply to the bankruptcy court. The district court can refer to the bankruptcy court only matters that are within its bankruptcy jurisdiction. See 28 U.S.C. § 157(b)(1). No statute permits a district court to refer to the bankruptcy court matters covered by diversity jurisdiction. Thus, diversity would not give the bankruptcy court any power over the adversary proceeding.

17

**6.  Mr. Bistritz was not required to bring his claims in bankruptcy court.**

Finally, Mr. Szanto argues that the bankruptcy court should not have forced him to bring his claims as counterclaims in Florida state court, but rather should have waited until Mr. Bistritz filed his claims in bankruptcy court.[7]  We reject this argument for three reasons.

First, Mr. Szanto incorrectly assumes that Mr. Bistritz has a duty to file a claim in the bankruptcy case.  Creditors generally must file claims in order to receive distributions from the estate, but they are not required to submit themselves to the bankruptcy court's jurisdiction.

Second, there are limits on the bankruptcy court's constitutional power to decide counterclaims brought against persons filing claims against the estate.  See Stern, 564 U.S. at 487.  Abstention permitted the bankruptcy court to avoid this constitutional problem.

Third, as discussed above, the dismissal of the underlying bankruptcy case moots this argument.  See section B.4, supra.

**C.  The court properly denied the Motion for Reconsideration.**

Civil Rule 60(b), made applicable through Rule 9024,

_____

[7] Relatedly, Mr. Szanto also argues that he has a constitutional right to bankruptcy protection.  He is wrong.  See In re Kane, 336 B.R. 477, 481 (Bankr. D. Nev. 2006) ("there is no constitutional right to file for bankruptcy"); In re Golden State Capital Corp., 317 B.R. 144, 149 (Bankr. E.D. Cal. 2004) ("A debtor does not have a constitutional or fundamental right to a discharge in bankruptcy.  Similarly, the automatic stay should not be viewed as a 'right,' but more as a 'privilege' which may be denied to petitioners who abuse it." (citations omitted)).

18

provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>>
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>>
>> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>>
>> (4) the judgment is void;
>>
>> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>>
>> (6) any other reason that justifies relief.

Mr. Szanto argues that "surprise" and "misconduct by an opposing party" regarding the language of the order warrant striking the order under Civil Rule 60(b) for three reasons.

First, he argues that the written order improperly deviated from the court's oral ruling. He contends that "most of the proposed language of the ORDER was neither discussed nor analyzed by the Court nor ever stated on the record." But there is no requirement that written orders conform to oral rulings. Courts enter written orders partly in order to permit the judge to consider the form and substance of the ruling more carefully than is possible during a hearing. See Rawson v. Calmar S.S. Corp., 304 F.2d 202, 206 (9th Cir. 1962) ("The trial judge is not to be lashed to the mast on his off-hand remarks in announcing decision prior to the presumably more carefully considered deliberate

19

findings of fact." (citations omitted)).

Second, Mr. Szanto argues that the written order improperly decided unnecessary issues. Mr. Szanto contends that "[t]his Court, having abstained from jurisdiction, has thereby ended all of its ability to adjudicate any matter, issue or law in this case" and should not have analyzed its jurisdiction over the adversary proceeding. (Emphasis omitted.)

We reject this argument. The bankruptcy court properly stated the reasons for its decision to abstain, including (as Tucson Estates requires) doubts about the bankruptcy court's jurisdiction. Mr. Szanto disagrees with the court's reasoning, but he was not entitled to prevent the court from stating its reasoning.

Third, Mr. Szanto also argues that the order contained erroneous statements about his possible forum shopping. In its consideration of the Tucson Estates factors, the court did not make any final finding on this issue, but stated during the hearing that it was suspicious of Mr. Szanto's motives. The order adequately reflected the court's statements at the hearing, and the record supports the bankruptcy court's suspicions. Because possible forum shopping is one of the Tucson Estates factors, the bankruptcy court did not err in noting its suspicions in its order.

## CONCLUSION

For the foregoing reasons, we conclude that the bankruptcy court did not err in abstaining from hearing the adversary proceeding or denying the Motion for Reconsideration. Accordingly, we AFFIRM.

20